UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 100REPORTERS LLC<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE<br><br>    Defendant,<br><br> and<br><br>DR. THEO WAIGEL<br> Karl-Scharnagl-Ring 8<br> 80539 München<br> Germany,<br><br>    Proposed Defendant-<br>    Intervenor. | Civil Action No. 14-1264 (RC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INDEPENDENT CORPORATE COMPLIANCE MONITOR'S MOTION TO INTERVENE**

Dr. Theo Waigel, who served for four years as independent corporate compliance monitor (the "Monitor") to Siemens Aktiengesellschaft ("Siemens"), respectfully submits this Memorandum of Points and Authorities in Support of Monitor's Motion to Intervene pursuant to Rules 24(a)(2) and 24(b) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiff 100Reporters LLC seeks the release of six broad categories of documents by means of its Freedom of Information Act ("FOIA") request. The information requested includes confidential information submitted by the Monitor to the U.S. Department of Justice ("DOJ") relating to the four-year corporate compliance monitorship that was required as part of Siemens's

2008 criminal and civil resolutions of violations of the U.S. Foreign Corrupt Practices Act ("FCPA").  In accordance with these resolutions, the Monitor evaluated Siemens's anti-corruption compliance program and documented the Monitor's findings and recommendations in four annual reports.  All of those reports by the Monitor were submitted to the DOJ with the stated expectation that they would be kept confidential.  The Monitor seeks the Court's leave to intervene in this action to protect from public disclosure these materials comprising highly confidential communications by the Monitor to the DOJ regarding these matters.  Due to Dr. Waigel's role as independent corporate compliance monitor—whose responsibilities depended on the ability to have unfettered access to Siemens, as well as the ability to communicate openly about his findings and recommendations to the DOJ—he is uniquely positioned to present arguments regarding the necessity of preserving the confidentiality of this information.

      The Monitor satisfies the qualifications for intervention as of right under Rule 24(a)(2).  The Monitor's motion is timely, as it is being filed mere days after the DOJ filed its answer, and before any further progression of the case.  The Monitor has a significant legal interest in his own mandate, established by the settlement agreements, empowering the Monitor to evaluate the effectiveness of Siemens's anti-corruption compliance program.  The Monitor's ability to effectively execute his mandate depended in large part on his ability to communicate openly with both Siemens (including numerous internal employees) and the DOJ on matters of extreme sensitivity with the expectation that they would be kept confidential.  The documents that Plaintiff seeks are reports and other materials that the Monitor submitted, and thus he has a direct interest in this case.  Moreover, the FOIA request by Plaintiff threatens the Monitor's interests and would impair them absent application of relevant FOIA exemptions that the Monitor intends

to raise. It would also undermine the efforts of future independent corporate compliance monitors to satisfy similar mandates.

Alternatively, for many of the same reasons, permissive intervention under Rule 24(b) is appropriate. Intervention at this preliminary stage of the proceedings will not cause undue delay or prejudice to either Plaintiff or the DOJ and the question of whether the FOIA exemptions bar dissemination of the information sought by Plaintiff is a common question of law and fact shared by the Monitor and the existing parties.

## BACKGROUND

### I.   The Monitor's Mandate.

On December 15, 2008, Siemens settled civil and criminal charges alleging that the Company violated certain provisions of the FCPA by consenting to the entry of a final judgment with the U.S. Securities and Exchange Commission ("SEC") and entering into a plea agreement with the DOJ. *See* Notice Regarding Corporate Monitorship, *United States v. Siemens Aktiengesellschaft*, No. 08-367 (D.D.C. Dec. 18, 2012), ECF No. 23 (hereinafter "Monitorship Notice") (attached as Exhibit C to Plaintiff's Complaint) ¶¶ 1-4; *id.*, Plea Agreement (D.D.C. Dec. 15, 2008), ECF No. 14; Consent of Defendant Siemens Aktiengesellschaft, *SEC v. Siemens Aktiengesellschaft*, No. 08-2167 (D.D.C. Dec. 12, 2008), ECF No. 1-3 (hereinafter "Consent"); *id.*, Final Judgment as to Siemens Aktiengesellschaft (Dec. 12, 2008), ECF No. 4 (hereinafter "Final Judgment"). In accordance with those agreements, Siemens retained former German Minister of Finance Dr. Theo Waigel to serve as its independent corporate compliance monitor to evaluate:

> the effectiveness of the internal controls, record-keeping and financial reporting policies and procedures of Siemens as they relate to Siemens' current and ongoing compliance with the books and records, internal accounting controls and anti-bribery provisions of the FCPA and other applicable anti-corruption laws . . . and

3

> take such reasonable steps as, in his or her view, may be necessary to fulfill the foregoing mandate (the "Mandate").

Monitorship Notice ¶ 6 (brackets omitted); Statement of Offense as to Defendant Siemens Aktiengesellschaft, Attachment 2, *United States v. Siemens Aktiengesellschaft*, No. 08-367 (D.D.C. Dec. 15, 2008), ECF No. 15 (hereinafter "Statement of Offense") (attached as Exhibit B to Plaintiff's Complaint) ¶ 1; Consent ¶ 3; Final Judgment § IV, ¶ 1.

To execute this Mandate, the settlement agreements directed the Monitor to conduct an initial review of the anti-corruption compliance program of Siemens and to prepare an initial report, followed by up to three subsequent reviews and reports. *E.g.*, Statement of Offense, Attachment 2, ¶ 3. The agreements required that each report "set[ ] forth the Monitor's assessment and mak[e] recommendations reasonably designed to improve the effectiveness of Siemens' program for ensuring compliance with the anti-corruption laws." *Id*. ¶ 4. At the conclusion of each follow-up review, they required the Monitor to "certify whether the compliance program of Siemens, including its policies and procedures, [was] reasonably designed and implemented to detect and prevent violations within Siemens of the anti-corruption laws." *Id*. ¶ 6. The agreements also directed the Monitor to provide regular communications to the DOJ and the SEC by requiring him to submit a work plan to the agencies for comment prior to each review, *id*. ¶ 3, provide them with the Monitor's written reports following the conduct of each review, *id*. ¶ 4, and report any improper activities or violations of law discovered during the monitorship, *id*. ¶ 8. Essential to all of these functions was that the Monitor would have access to extremely sensitive and proprietary information of Siemens.

The settlement agreements specifically authorized the Monitor to access Siemens's confidential information and to formulate the conclusions for his assessments and reviews through the review of relevant documents; on-site observations of Siemens's internal controls,

4

record keeping, and internal audit procedures; meetings and interviews with employees, officers, and directors; and analyses, studies, and testing of Siemens's compliance programs and controls. *Id*. ¶ 7.  While the settlement agreements laid out a four-year term for the monitorship, they indicated that it could be shortened or lengthened at the discretion of the DOJ and the SEC. *Id*. ¶ 6.  After four years, and based on concurrence with the SEC, the DOJ authorized the termination of the monitorship, finding that Siemens had "satisfied its obligations under the plea agreement with respect to the corporate compliance monitorship." Monitorship Notice ¶ 11.

### II.     Plaintiff's FOIA Request.

According to the Complaint in this case, on July 23, 2013, Plaintiff submitted a FOIA request to the DOJ seeking, among other things, all records related to the Monitor's actions under the settlement agreements.  Compl. ¶ 18; Ex. D.  In a January 6, 2014 letter, the DOJ denied Plaintiff's request on the grounds that the information sought was exempt from disclosure pursuant to FOIA Exemption 7(A) and, on April 22, 2014, affirmed that denial on administrative appeal.  Compl. ¶¶ 21-24; Exs. F, H.  The DOJ did not notify the Monitor of Plaintiff's FOIA request during the course of these proceedings.

On July 24, 2014, Plaintiff brought this FOIA action against the DOJ seeking the release of six broad categories of information related to the monitorship, including all documents authored or submitted by the Monitor in the completion of his duties under the settlement agreements.  Compl. ¶ 22.  On October 15, 2014, the DOJ contacted the Monitor's counsel by phone to provide notice of the FOIA request and the action.  The Monitor now seeks to intervene pursuant to Rule 24 to protect confidential records of the deliberative process and law enforcement proceedings in which he participated.

## ARGUMENT

"The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). The Monitor has such a stake in the present matter due to his interests in preserving the confidentiality of his communications with the DOJ. This interest flows directly from the Monitor's Mandate, established by the settlement agreements, and the fact that Plaintiff seeks communications by the Monitor with the DOJ that, if published, would impair this interest. Accordingly, the Monitor is entitled to intervene as of right pursuant to Rule 24(a)(2). In the alternative, the Monitor should be permitted to intervene pursuant to Rule 24(b).

### I.   The Monitor Should Be Granted Leave To Intervene As Of Right Under Rule 24(a)(2).

The D.C. Circuit has explained that Rule 24(a)(2) requires the existence of four prerequisites to intervention as of right:

> (1) the application to intervene must be timely; (2) the party must have an interest relating to the property or transaction which is the subject of the action; (3) the party must be so situated that the disposition of the action may, as a practical matter, impair or impede the party's ability to protect that interest; and (4) the party's interest must not be adequately represented by existing parties to the action.

*E.g.*, *Defenders of Wildlife & Sierra Club v. Perciasepe*, 714 F.3d 1317, 1322-23 (D.C. Cir. 2013) (quoting *Bldg. & Constr. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)). Additionally, an applicant to intervene as of right must demonstrate that it has Article III standing. *Id.* at 1323 (citing *In re Endangered Species Act Section 4 Deadline Litig.*, 704 F.3d 972, 976 (D.C. Cir. 2013)). The Monitor fulfills all of these requirements in the present action.

### A. The Monitor's Motion Is Timely.

The Monitor's request to intervene as of right is timely. The D.C. Circuit has recently re-emphasized that there is no hard and fast formula for timeliness, but it is "'to be judged in consideration of all the circumstances.'" *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (quoting *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001)). Courts in this district have routinely found that applications to intervene are timely when they are brought shortly after the commencement of the case and "before any discovery or substantive progress ha[s] been made." *E.g.*, *Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012) (finding that a request to intervene was timely when it was "filed less than two weeks after Defendants filed their responsive pleadings"); *Appleton v. FDA*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004) (finding the timeliness element satisfied when the motion was filed "within two months of FDA's notification of the pending suit"). While courts view the amount of time elapsed since an action's inception as relevant, its measure "'is not in itself the determinative test.'" *Roane*, 741 F.3d at 151 (quoting *Hodgson*, 473 F.2d at 129). "Instead, the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Id*. (citing *Hodgson*, 473 F.2d at 128-29). Here, the Monitor has brought his application mere days after the filing of the DOJ's own responsive pleading. No further progress has been made in this case such that the Monitor's intervention would in any way upset the litigation and prejudice the parties. Thus, the Monitor's application is timely.

### B. The Monitor Has Strong Interests In This Action And Disclosure Would Impair These Interests.

The Monitor has a substantial and independent interest in the Mandate established by the settlement agreements charging him with the assessment and review of Siemens's anti-

corruption compliance program and reporting his findings to the DOJ and the SEC. *See, e.g.*, Statement of Offense, Attachment 2, ¶ 6. Confidentiality between the Monitor and the DOJ — and the expectation that this confidentiality would be maintained—was vital to the Monitor's ability to carry out the Mandate.

The Monitor has a substantial interest in this action due to the fact that Plaintiff seeks the disclosure of reports authored by the Monitor over the course of the Siemens monitorship and submitted to the DOJ and the SEC under the terms of the settlement agreements. These documents contain highly confidential information relating to Siemens's financial controls, compliance policies and procedures, and business operations, as are subject to FOIA Exemption 4. When submitting these documents, the Monitor consistently asked the DOJ to preserve confidentiality and understood that it would do so. Indeed, it is only by protecting these materials from disclosure that the Monitor could ensure that it would have unfettered access to Siemens's sensitive information and to communicate the Monitor's findings in detail to the DOJ and the SEC. Courts regularly allow parties to intervene in FOIA suits to prevent the disclosure of these types of confidential and commercially-sensitive materials. *See, e.g., Pub. Citizen v. U.S. Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 88, 91-92 (D.D.C. 2013) (permitting intervention in a FOIA action to prevent disclosure of annual reports that included reviews conducted by independent review organizations of corporate compliance programs submitted to a government agency under the terms of settlement agreements).

The Monitor has a direct legal interest in preventing the disclosure of this information. The D.C. Circuit has held, for example, that Exemption 5 of FOIA authorizes the withholding of "inter-agency or intra-agency" documents, which can "'include agency records containing comments solicited from nongovernmental parties.'" *McKinley v. Bd. of Governors of Fed.*

*Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) (quoting *Nat'l Inst. of Military Justice v. U.S. Dep't of Defense*, 512 F.3d 677, 680, 682 (D.C. Cir. 2008)).  "When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, the D.C. Circuit has found that it is 'entirely reasonable to deem the resulting document to be an "intra-agency memorandum" for purposes of'" Exemption 5 applicability.  *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 28, 45 (D.D.C. 2012) (quoting *Nat'l Inst. of Military Justice*, 512 F.3d at 680-81).  Here, the settlement agreements created a framework in which the Monitor "assess[ed] and ma[de] recommendations reasonably designed to improve the effectiveness of Siemens' program for ensuring compliance with the anti-corruption laws," which he communicated to government agencies through various submissions.  Statement of Offense, Attachment 2, ¶ 4.  Under the relationship created by the settlement agreements, the Monitor served in many ways as an outside expert and consultant to the DOJ and the SEC, such that the Monitor was part of their deliberative process of determining Siemens's compliance with the terms of the settlement agreements.  *See Nat'l Inst. of Military Justice*, 512 F.3d at 680-81.  At the same time, critical to the Monitor's Mandate was his ability to have access to commercially sensitive information belonging to Siemens.  Moreover, the Monitor's independent interest in performing his Mandate as effectively as possible—through open and detailed communications both with the DOJ and Siemens about extremely sensitive matters—can be best ensured by preserving confidentiality.  Accordingly, the Monitor has an interest in the confidentiality of "documents such as the ones here—submitted by [a] non-agency part[y] in response to an agency's request for advice."  *Id*. at 681.

The Monitor also has an interest in preventing the dissemination of information that is subject to FOIA Exemption 7(A), which applies to "records or information compiled for law

enforcement purposes." 5 U.S.C. § 552(b)(7). Courts have applied Exemption 7(A) to reports submitted to government agencies by outside parties operating in capacities functionally similar to compliance monitors. *See, e.g.*, *In re LTV Sec. Litig.*, 89 F.R.D. 595, 617 (N.D. Tex. 1981) (finding reports submitted by a Special Officer retained to implement an SEC consent degree to be covered); *ISC Grp., Inc. v. U.S. Dep't of Defense*, No. 88-0631, 1989 WL 168848, at *4-6 (D.D.C. May 22, 1989) (exempting internal investigative reports prepared by a third party to assist an investigation from disclosure). Withholding information under Exemption 7(A) requires a showing "that (1) a law enforcement proceeding for which the records were compiled is pending or reasonable prospective and (2) that the release of the information could reasonably be expected to cause some articulable harm." *Cuban v. SEC*, 744 F. Supp. 2d 60, 85 (D.D.C. 2010). The information provided by the Monitor to government agencies under the settlement agreements was compiled as part of a law enforcement proceeding at the time that it was submitted and continues to be sensitive in light of the pending indictments of former Siemens employees.

These exemptions should apply to the information sought in this case. And the Monitor's participation will facilitate not just the proper application of FOIA exemptions here, but also in the many similar situations beyond this case that could be undermined by Plaintiff's lawsuit. As the United States Government repeatedly has recognized, a compliance monitor has a significant interest in the successful performance of its mandate, which is intended to reduce the risk of the recurrence of any corporate misconduct. In order to carry out its function, a monitor must be able to access a company's confidential and proprietary business information, foster open communications with the company, and to communicate its findings and recommendations to the government in a frank and straightforward manner without the risk that the information will fall

into outside hands to the detriment of the corporation and public interest.  *See generally* Craig S. Morford, Memorandum for Heads of Department Components and United States Attorneys (Mar. 7, 2008), *available at* http://www.justice.gov/sites/default/files/dag/legacy/2008/03/20/morford-useofmonitorsmemo-03072008.pdf.  In this case, the very terms of the settlement agreements provided that the Monitor was to have access to Siemens's highly confidential and proprietary business information and to communicate work plans, reports, and other updates to the DOJ and the SEC.  *See, e.g.*, Statement of Offense, Attachment 2, ¶¶ 3-8.  As a result, the Monitor has his own interest in ensuring proper protection of the confidential communications among compliance monitors, the companies they are monitoring, and the government agencies to which they report.

Given that the Monitor's interests here are in carrying out the Mandate by protecting the confidentiality of materials that he provided to the DOJ and the SEC in the course of the monitorship, release of this information plainly would impair his interests.

### C.     The Monitor's Interests Are Not Adequately Represented By The Existing Parties.

No party to this action adequately represents the Monitor's interests, which are in carrying out his Mandate.  The Monitor therefore satisfies the final prong of the Rule 24(a) analysis, which is "not onerous" and "'is satisfied if the applicant shows that representation of his interest "may be" inadequate; and the burden of making that showing should be treated as minimal.'"  *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).  Plaintiff's interest is opposed to that of the Monitor, whereas the DOJ's primary interest "lies in responding appropriately to plaintiff's request."  *Appleton*, 310 F. Supp. 2d at 197.  These interests can diverge from the Monitor's important interest in carrying out the Mandate.  *See Fund for*

*Animals*, 322 F.3d at 736 (noting that the D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors"). Further, as the author of the reports sought by Plaintiff, the Monitor is in a unique position to protect these interests. Accordingly, the Monitor should be granted the opportunity to intervene and voice his interest in preserving his interests in confidentiality.

### D. The Monitor Has Standing To Intervene.

Courts in this district treat the standing analysis as nearly interchangeable with evaluation of an applicant under the Rule 24(a)(2) rubric. *See WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 13 n.5 (D.D.C. 2010) ("In most instances, the standing inquiry will fold into the underlying inquiry under Rule 24(a): generally speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*."). Here, this requirement is satisfied, because disclosure of confidential monitorship information—submitted by the Monitor to the DOJ as part of the Monitor's duties—will result in injury to the Monitor, fairly traceable to Plaintiff's request, which this Court can redress by barring such production.

## II. In The Alternative, Permissive Intervention Is Appropriate Under Rule 24(b).

Should this Court determine that the Monitor is not entitled to intervene under Rule 24(a)(2) as of right, the Monitor requests in the alternative that he be granted leave to intervene pursuant to Rule 24(b). "On timely motion, the court must permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Additionally, in exercising its discretion "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*.

Permissive intervention is proper here because the Monitor shares a common question with the already existing parties—namely, whether FOIA exemptions bar the release of the information sought by Plaintiff—and, as previously noted, the intervention would not cause undue delay or prejudice.  This Court would benefit from the Monitor's participation, both because of its independent interest flowing from his own Mandate and because the Monitor authored and submitted the documents the Plaintiff seeks.  He therefore has full measure of the importance of ensuring the confidentiality of these documents.

## CONCLUSION

For the foregoing reasons, the Monitor respectfully requests that the Court grant the Monitor's Motion to Intervene in this action and docket its Answer.


Dated:  October 20, 2014               Respectfully submitted,

                                          /s/ Geoffrey M. Sigler
                                       F. Joseph Warin (D.C. Bar No. 235978)
                                       Geoffrey M. Sigler (D.C. Bar No. 478390)
                                       Jeffrey S. Rosenberg (D.C. Bar No. 995893)
                                       GIBSON, DUNN & CRUTCHER LLP
                                       1050 Connecticut Avenue, N.W.
                                       Washington, D.C.  20036
                                       Telephone: (202) 887-3752
                                       E-mail:  fwarin@gibsondunn.com
                                       E-mail:  gsigler@gibsondunn.com
                                       E-mail:  jsrosenberg@gibsondunn.com

                                       *Counsel for the Independent Corporate Compliance Monitor*