**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| 100REPORTERS LLC, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-1264 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 13, 17 |
| | : | | |
| UNITED STATES DEPARTMENT | : | | |
| OF JUSTICE, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**Granting Siemens's Motion to Intervene; Granting Dr. Waigel's
Motion to Intervene**

## I.  INTRODUCTION

In this Freedom of Information Act ("FOIA") lawsuit, Plaintiff 100Reporters LLC

("100Reporters") seeks to compel the United States Department of Justice ("DOJ") to produce

six categories of information related to the compliance monitoring program established by

Siemens Aktiengesellschaft ("Siemens") in connection with its plea agreements in 2008 for

violations of the Foreign Corrupt Practices Act ("FCPA").  Now before the Court are separate

motions to intervene filed by Siemens and Dr. Theo Waigel ("Dr. Waigel" or the "Monitor"),

who served for four years as the independent corporate compliance monitor to Siemens

following resolution of the FCPA investigation.  For the reasons set forth below, the Court will

grant both motions to intervene.

## II.  BACKGROUND

### A.  The Siemens Monitorship

In December 2008, Siemens entered into a plea agreement with the DOJ and a consent

decree with the U.S. Securities and Exchange Commission ("SEC") to resolve criminal and civil

allegations that Siemens and three of its subsidiaries committed certain violations of the FCPA.

*See* Notice Regarding Corporate Monitorship, *United States v. Siemens Aktiengesellschaft*, No.

08-367 (D.D.C. Dec. 18, 2012), ECF No. 23 ("Monitorship Notice"), at ¶¶ 1-4; Plea Agreement,

*id.*, (D.D.C. Dec. 15, 2008), ECF No. 14 ("Plea Agreement"); Consent of Defendant Siemens,

*SEC v. Siemens Aktiengesellschaft*, No. 08-2167 (D.D.C. Dec. 12, 2008), ECF No. 1-3

("Consent").  As required by those agreements, Siemens engaged Dr. Waigel to serve as the

independent corporate monitor.  *See, e.g.*, Plea Agreement ¶ 12; Consent ¶ 3.  The DOJ required

that the Monitor evaluate

> the effectiveness of the internal controls, record-keeping and financial reporting
> policies and procedures of Siemens as they relate to Siemens'[s] current and
> ongoing compliance with … provisions of the FCPA and other applicable anti-
> corruption laws … and take such reasonable steps as, in his or her view, may be
> necessary to fulfill the foregoing mandate.

Monitorship Notice ¶ 6; Statement of Offense as to Defendant Siemens, Attach. 2, *United States*

*v. Siemens Aktiengesellschaft*, No. 08-367 (D.D.C. Dec. 15, 2008), ECF No. 15 ("Statement of

Offense"), at ¶ 1.

In furtherance of the Monitor's mandate, the DOJ required that Siemens provide the

Monitor with broad access to Siemens's confidential and commercially-sensitive information,

documents, and records.  *See* Statement of Offense ¶ 2.  The DOJ also expressly authorized

Siemens to share privileged information with the Monitor subject to a non-waiver arrangement.

*See id.*  Similarly, Siemens was obligated to ensure that the Monitor could inspect all relevant

documents, conduct on-site observations of Siemens's internal controls and internal audit

procedures, meet with and interview employees, officers, and directors, and analyze and test Siemens's compliance programs and controls.  *See id.* ¶ 7.

Further, the settlement agreements directed the Monitor to conduct an initial review of Siemens's anticorruption compliance program and to prepare an initial report, followed by up to three subsequent reviews and reports.  *See id.* ¶ 3.  The agreements required that each report "set[] forth the Monitor's assessment and mak[e] recommendations reasonably designed to improve the effectiveness of Siemens's[s] program for ensuring compliance with the anti-corruption laws."  *Id.* ¶ 4.  At the conclusion of each follow-up review, the Monitor also was required to "certify whether the compliance program of Siemens, including its policies and procedures, [was] reasonably designed and implemented to detect and prevent violations within Siemens of the anti-corruption laws."  *Id.* ¶ 6.  Finally, the agreements directed the Monitor to provide regular communications to the DOJ and the SEC by requiring the Monitor to submit a work plan to the agencies for comment prior to each review, *see id.* ¶ 3, to provide the agencies with the Monitor's written reports following completion of each review, *see id.* ¶ 4, and to report any improper activities or violations of law discovered during the monitorship.  *See id.* ¶ 8.

Although the plea agreement contemplated a four-year term for the monitorship, the agreement also provided that the term could be shortened or lengthened at the discretion of the DOJ.  *See id.* ¶ 6.  After four years, the DOJ authorized the termination of the monitorship, concluding that Siemens had "satisfied its obligations under the plea agreement with respect to the corporate compliance monitorship."  Monitorship Notice ¶ 11.  The DOJ specifically determined that Siemens had granted the Monitor broad access to its documents, projects, and employees:

> Over the course of those four years, the Monitor conducted on-site or remote reviews of Siemens's[s] activities in 20 countries; conducted limited or issue-

specific reviews in or relating to an additional 19 countries; reviewed over 51,000 documents…; conducted interviews of or meetings with 2,300 Siemens employees; observed over 180 regularly scheduled company events; and spent the equivalent of over 3,000 auditor days conducting financial studies and testing.

*Id.* ¶ 7.  Indeed, the Monitor had incorporated this information into, among other things, the four annual reports that the Monitor submitted to the DOJ, which described Siemens's confidential business information and contained detailed findings and recommendations relating to a number of topics, including third-party risks, financial controls, and Siemens's compliance policies and programs.  *See id.* ¶¶ 7-9.

## B.  100Reporters' FOIA Request

By letter dated July 23, 2013, 100Reporters, a not-for-profit news media organization, submitted a FOIA request to the DOJ seeking all records relating to the Siemens plea agreement and monitorship.  *See* Compl. ¶¶ 18-19.  The DOJ denied this request on the basis that the materials 100Reporters sought were exempt from disclosure under FOIA Exemption 7(A), *see id.* ¶ 21, and the DOJ later affirmed its denial in response to 100Reporters' appeal.  *See id.* ¶ 23. Thus, on July 24, 2014, 100Reporters commenced the instant lawsuit against the DOJ seeking to compel the production of six specific categories of information relating to the Siemens plea agreement and monitorship, including the four annual reports that the Monitor submitted to the DOJ during the course of the monitorship.  *See id.* ¶ 22.

## C.  Motions To Intervene

The DOJ did not notify Siemens or the Monitor regarding 100Reporters' FOIA request during the pendency of the proceedings before the agency.  *See* Siemens's Motion to Intervene 4; Monitor's Motion to Intervene 5.  Instead, Siemens first became aware of the FOIA request when it learned of 100Reporters' lawsuit on October 1, 2014, *see* Siemens's Motion to Intervene 4, and the Monitor became aware of the FOIA request on October 15, 2014, when the DOJ

contacted the Monitor's counsel by telephone to provide notice of the FOIA request and civil

action.  *See* Monitor's Motion to Intervene 5.  On October 20, 2014, Siemens and the Monitor

each filed a motion to intervene in the lawsuit as a matter of right under Federal Rule of Civil

Procedure 24(a) or, alternatively, to intervene under Rule 24(b)'s permissive intervention

standard.

## III.  ANALYSIS: INTERVENTION AS OF RIGHT

"The right of intervention conferred by Rule 24 implements the basic jurisprudential

assumption that the interest of justice is best served when all parties with a real stake in a

controversy are afforded an opportunity to be heard."  *Hodgson v. United Mine Workers of*

*Am.*,473 F.2d 118, 130 (D.C. Cir. 1972).  Specifically, Rule 24(a) provides that

> [u]pon timely application anyone shall be permitted to intervene in an action …
> when the applicant claims an interest relating to the property or transaction which
> is the subject of the action and the applicant is so situated that the disposition of
> the action may as a practical matter impair or impede the applicant's ability to
> protect that interest, unless the applicant's interest is adequately represented by
> existing parties.

As the D.C. Circuit has explained, the right to intervene under Rule 24(a) depends on the

applicant's ability to satisfy four factors: (1) the timeliness of the motion to intervene; (2)

whether the applicant claims an interest relating to the property or transaction that is the subject

of the action; (3) whether the applicant is so situated that the disposition of the action may as a

practical matter impair or impede the applicant's ability to protect that interest; and (4) whether

the applicant's interest is adequately represented by existing parties.  *See Fund for Animals, Inc.*

*v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citations omitted); *see also Jones v. Prince*

*George's Cnty., Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (listing the four elements of Rule

24(a) as "timeliness, interest, impairment of interest, and adequacy of representation").  In

addition, an applicant seeking to intervene as of right under Rule 24(a) must possess Article III standing to participate in the lawsuit.  *See Jones*, 348 F.3d at 1017; *Fund for Animals*, 322 F.3d at 731-32.  The Court addresses each of these issues below.

### A.  Timeliness

The timeliness of a motion to intervene must "'be judged in consideration of all the circumstances.'"  *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (quoting *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)).  "Though the time elapsed since the inception of the suit is relevant, measuring the length of time passed is not in itself the determinative test because [courts] do not require timeliness for its own sake."  *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (internal citations, quotations, and alterations omitted).  "Instead, the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties."  *Id.* (citations omitted).  "Thus, even where a would-be intervenor could have intervened sooner, in assessing timeliness a court must weigh whether any delay in seeking intervention unfairly disadvantaged the original parties."  *Id.* (internal citations, quotations, and alterations omitted).

#### 1.  Siemens

Siemens filed its motion to intervene on October 20, 2014, which was just a few weeks after it first learned of 100Reporters' lawsuit against the DOJ.  *See* Siemens's Motion to Intervene 6.  Further, though 100Reporters' complaint was filed on July 24, 2014, three months before Siemens's motion, the DOJ did not submit its first responsive pleading until October 14, 2014, which was only days before Siemens filed its motion.  *See generally* DOJ's Answer.  To date, no substantive progress has occurred in this action, and the Court finds that allowing Siemens to intervene at this time would not unduly disrupt the litigation or pose an unfair

detriment to the existing parties. *See Roane*, 741 F.3d at 151. Indeed, this Court routinely has held that intervention applications are timely when a party seeks to intervene under circumstances similar to those here. *See, e.g.*, *Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012) (finding intervention application timely when it was filed "less than two weeks after Defendants filed their responsive pleadings, and before any discovery or substantive progress had been made in the case"); *Appleton v. FDA*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004) ("*Appleton II*") (finding intervention applications timely when they were filed within two months of the agency notifying the intervenors about the lawsuit). The Court therefore finds that Siemens's motion to intervene was timely.

### 2. The Monitor

Like Siemens, the Monitor filed his motion to intervene on October 20, 2014, which was just a few days after both when he learned of 100Reporters' lawsuit against the DOJ and when the DOJ filed its first responsive pleading. *See* Monitor's Motion to Intervene 7. Accordingly, the Court finds that the Monitor's motion to intervene was timely for the same reasons that Siemens's motion was timely.

### B. Interests

Rule 24(a) requires that a prospective intervenor "must demonstrate a legally protected interest in the action." *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). This "test operates in large part as a 'practical guide,' with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 12-13 (D.D.C. 2010) (quoting *United States v. Morten*, 730 F. Supp. 2d 11, 15-16 (D.D.C. Aug. 4, 2010)).

1. Siemens

The Court finds, and 100Reporters does not dispute, that Siemens possesses a clear

interest in the subject of this action because 100Reporters has requested that the DOJ release

materials relating to the Siemens monitorship that very likely contain Siemens's confidential and

proprietary information, including sensitive commercial information about Siemens's

compliance programs, business operations, and internal controls.  *See* Compl. ¶ 22; Siemens's

Motion to Intervene 6-7.  Indeed, preventing the disclosure of commercially-sensitive and

confidential information is a well-established interest sufficient to justify intervention under Rule

24(a).  *See, e.g.*, *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 900 (D.C. Cir. 1999)

(when plaintiff filed FOIA request to the FDA seeking documents relating to abandoned drug

applications, corporation that had submitted five such drug applications was allowed to intervene

because applications potentially contained confidential commercial information protected by

FOIA Exemption 4); *Appleton II*, 310 F. Supp. 2d at 197 (intervenor-companies whose new drug

applications to the FDA allegedly contained trade secrets and confidential information had

interest in FOIA lawsuit seeking release of materials from the FDA's review of those

applications); *Airline Pilots Ass'n, Int'l. v. U.S. Postal Serv.*, No. 03-cv-2384, 2004 WL

5050900, at *1, 3 (D.D.C. June 24, 2004) (FedEx permitted to intervene when FOIA request to

U.S. Postal Service sought release of FedEx's confidential commercial and financial information

potentially protected under FOIA Exemption 4); *see also* Minute Order, *Pub. Citizen v. U.S.*

*Dep't of Health and Human Servs.*, No. 11-cv-1681 (D.D.C. Nov. 18, 2011) (granting Pfizer's

unopposed motion to intervene when plaintiff's FOIA request sought documents containing

Pfizer's commercial information, including information about its sales activities, customers, and

compliance program, and it was important to Pfizer's commercial and compliance activities that

this information remained confidential).  The Court therefore concludes that Siemens has a proper interest in this action.

### 2.  The Monitor

The Monitor asserts that he has a protectable interest in the subject of this action because 100Reporters seeks the disclosure of reports and other materials that were authored by the Monitor during the Siemens monitorship and submitted by him to the DOJ and the SEC under the terms of the settlement agreements, and in turn, these documents "contain highly confidential information relating to Siemens's financial controls, compliance policies and procedures, and business operations," which potentially is protected by FOIA Exemption 4.  *See* Monitor's Motion to Intervene 8.  The Monitor also asserts that when submitting the reports and making related communications with the DOJ, he asked the DOJ to preserve the confidentiality of the documents, and "it is only by protecting these materials from disclosure that the Monitor could ensure that it would have unfettered access to Siemens's sensitive information and to communicate the Monitor's findings in detail to the DOJ and the SEC."  *Id*.

In response, 100Reporters disputes the validity of the Monitor's Rule 24(a) interest as part of the plaintiff's broader argument that the Monitor has not suffered an injury sufficient for Article III standing.  Courts in this circuit generally treat the standing analysis for intervention as of right as equivalent to determining whether the intervenor has a "legally protected" interest under Rule 24(a).  *See, e.g.*, *Jones*, 348 F.3d at 1018 ("Article III's 'gloss' on Rule 24 requires an intervenor to have a 'legally protectable' interest." (quoting *S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984))); *WildEarth Guardians*, 272 F.R.D. at 13 n.5 ("[W]hen a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*." (citations omitted)); *see also Roeder*

*v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("With respect to intervention as

of right in the district court, the matter of standing may be purely academic.").  Because these

issues overlap significantly, the Court finds it appropriate to address here 100Reporters'

arguments about the Monitor's lack of an Article III injury insofar as those arguments also touch

upon the Rule 24(a) interest analysis.

Specifically, in opposition to the Monitor's motion to intervene, 100Reporters argues that

future disclosure of the requested materials will not injure the Monitor's general interest in being

"the Monitor" because the monitorship ended in 2012.  *See* Pl.'s Mem. Opp'n Motions to

Intervene 13.  In addition, 100Reporters suggests that the Monitor asserts a generalized and

abstract injury because he claims only that disclosure would injure future compliance monitors at

large by failing to protect the confidentiality of their official reports and communications with

government agencies.  *See id*.  Finally, 100Reporters asserts that the Monitor cannot create a

private interest under FOIA Exemption 5 — which authorizes the withholding of inter-agency or

intra-agency documents, including agency records containing comments solicited from

nongovernmental parties, *see McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331,

335-36 (D.C. Cir. 2011) (discussing 5 U.S.C. § 552(b)(5)) — or FOIA Exemption 7(A) — which

applies to "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7)

— because these two Exemptions were intended to establish protectable interests only for the

government, not for private individuals working outside the government like the Monitor.  *See*

Pl.'s Mem. Opp'n Motions to Intervene 14-16.

Despite 100Reporters' criticism, the Court is satisfied that the Monitor has a proper

interest in the subject of this action.  Indeed, this Court routinely has recognized that the

submitter of documents to a government agency has a cognizable interest in maintaining the

confidentiality of those documents that is sufficient under Rule 24(a). *See, e.g.*, *Pub. Citizen v. U.S. Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 91-92 (D.D.C. 2013) (Pfizer allowed to intervene when plaintiff sought disclosure of Pfizer's annual reports, which Pfizer was required to submit to the Department of Health and Human Services as part of complying with settlement agreements arising from the illegal off-label promotion of drugs); *Appleton II*, 310 F. Supp. 2d at 194 (applicant companies had interest in protecting trade secrets and confidential information that might be contained in the companies' new drug applications to the FDA when FOIA requestor sought documents related to the FDA's review of those applications); *Air Line Pilots Ass'n, Int'l v. FAA*, 552 F. Supp. 811, 812 (D.D.C. 1982) (McDonnell Douglas allowed to intervene when plaintiff sought records relating to the FAA's certification of an aircraft manufactured by McDonnell Douglas, where those FAA records included McDonnell Douglas's engineering drawings, change orders, flight test data, and narrative and non-narrative reports, all of which were submitted to the FAA during the certification process).

This interest in confidentiality often arises at least in part through FOIA Exemption 4, which protects against the disclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(5).  In fact, as the Monitor points out, 100Reporters makes no argument as to why Exemption 4 might not, at least in theory, protect the confidentiality of the Monitor's own reports and communications with the DOJ, which were submitted by the Monitor to the agency as part of the Siemens monitorship and in which there was a mutual expectation that the DOJ would keep the Monitor's documents confidential.  *See* Monitor's Reply Supp. Motion to Intervene 5, 8; *Waterkeeper Alliance v. U.S. Coast Guard*, No. CV 13-289, 2014 WL 5351410, at *15 (D.D.C. Sept. 29, 2014) (explaining that FOIA intervenor "intervened here because it wanted to protect its own documents and

prevent the exposure of trade secrets and confidential information that would cause it substantial harm if released to the public," and then granting intervenor's motion for summary judgment to withhold documents under Exemption 4). The Court, moreover, need not determine at this time whether Exemption 4 actually does prevent the release of the Monitor's reports and communications in order to find that the Monitor has an interest under Rule 24(a). *Cf. Pub. Citizen Health Research Grp. v. FDA*, No. CIV.A. 99-0177, 2000 WL 34262802, at *1-3 (D.D.C. Jan. 19, 2000) (applicant permitted to intervene to protect alleged interest in trade secrets and confidential information, but ultimately denying in part intervenor's motion for summary judgment to withhold certain categories of information under Exemption 4).

Furthermore, outside the FOIA litigation context, federal courts regularly have recognized preserving confidentiality as a sufficient interest under Rule 24(a), both when a statutory privilege is at stake or, more relevantly, when there exists a general interest in protecting the confidentiality of information without relation to a specific statutory right. *See, e.g.*, *SEC v. Goldstone*, No. CIV 12-0257, 2013 WL 6920854, at *28 (D.N.M. Dec. 13, 2013) (allowing intervention as of right for applicant KPMG when, in underlying litigation, defendants sought production of materials containing testimony by KPMG witnesses, and KPMG claimed that PCAOB Privilege prevented public disclosure of those materials, thus giving KPMG an opportunity to protect its interest in "a privilege Congress created"); *Oberoi v. Telluride Asset Mgmt. LLC*, No. 06-58, 2006 WL 2268455, at *1 (D. Minn. Aug. 8, 2006) (finding interest when intervenor "has demonstrated that discovery of the requested information [in civil litigation] could potentially adversely affect [its] interest in maintaining the confidentiality of its trade secrets and the confidential settlement agreement"); *Torah Soft Ltd. v. Drosnin*, No. 00 CIV. 0676, 2001 WL 1425381, at *2 (S.D.N.Y. Nov. 14, 2001) (finding that applicant "John Doe" had

"established an interest in the subject matter of the current action" when he sought to prevent disclosure during discovery in underlying litigation of a memorandum that potentially contained his identity and other allegedly "confidential information" about him); *Blum v. Schlegel*, 150 F.R.D. 38, 39 (W.D.N.Y. 1993) (allowing intervention as of right by professor "for the limited purpose of protecting her interest in the confidentiality of the information contained in [documents from the law school's tenure review files] requested by plaintiff during … discovery").

Indeed, though the confidentiality interest in some of these cases appears similar to the personal privacy interest protected by FOIA Exemption 6 — which permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6) — 100Reporters does not cite to any case holding that in a FOIA action, a Rule 24(a) interest must relate to a specific personal privacy interest enumerated by a FOIA Exemption.  Such a requirement would, in fact, be putting the cart before the horse because a ruling on the merits of an intervenor's right to withhold information under a certain FOIA Exemption clearly would be premature at this embryonic stage of the litigation.

Rather, the Court finds that it is sufficient for purposes of Rule 24(a) that the Monitor has an interest in maintaining the confidentiality of his reports and communications, as the DOJ indicated it would — whether under Exemption 4 or otherwise — and in turn, the Monitor should have an opportunity to litigate the merits of his interest, including whether the interest actually is covered by a FOIA Exemption, in a single proceeding involving all interested parties. *See Wildearth Guardians*, 272 F.R.D. at 12-13 (explaining that Rule 24(a)'s "interest" requirement operates "with the aim of disposing of disputes with as many concerned parties as

may be compatible with efficiency and due process" (citation omitted)); *see also Forest Guardians v. U.S. Dep't of Interior*, No. CIV-02-1003, 2004 WL 3426413, at *7-8 (D.N.M. Jan. 12, 2004) (finding interest under Rule 24(a) without citing to specific FOIA Exemption when applicant Livestock Associations argued that plaintiff's FOIA request sought the release of information regarding the identity of participating financial institutions and aggregate loan amounts, which, if released, might jeopardize the financial well-being of the associations' members and "have a chilling effect" by preventing members from obtaining necessary financing in the future). The Court therefore finds that the Monitor has a direct and personal interest in this action.[1]

### C.  Impairment Of Interests

In determining whether an applicant's interests will be impaired, courts in this circuit look to the "practical consequences" that the applicant may suffer if intervention is denied. *See Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977); *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 158 (D.D.C. 2001). One such consequence that frequently qualifies as impairment is when the disclosure of materials following the disposition of a FOIA action "could impair the applicants' ability to protect their trade secrets or confidential

---

[1]  Because the Court finds that the Monitor has an interest in this action, it does not address 100Reporters' separate argument that Exemptions 5 and 7(A) do not apply, nor need the Court address 100Reporters' argument that the Monitor incorrectly attempts to assert only a generalized interest on behalf of all future compliance monitors. The Court points out, however, that FOIA is a disclosure statute, and the Government can voluntarily disclose information even if that information is covered by a FOIA Exemption. *See Stone v. FBI*, 727 F. Supp. 662, 666 (D.D.C. 1990) ("Whereas the FOIA specifies when agencies must disclose certain information, the FOIA does not prevent agencies from voluntarily disclosing information that would otherwise be covered by one of the statutory exemptions." (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977)). Thus, if the Government decides to voluntarily disclose materials and that disclosure is not otherwise prohibited by law (*e.g.*, by the Trade Secrets Act or the Privacy Act), it is not clear that a private party such as Siemens or the Monitor could oppose disclosure.

information." *Appleton II*, 310 F. Supp. 2d at 197.  Indeed, impairment appears especially obvious in FOIA litigation because if the plaintiff succeeds, the public release of the requested materials is both imminent and irreversible.  *Cf. Fund For Animals*, 322 F.3d at 735 (finding impairment in part because "there is no question that the task of reestablishing the status quo if the [plaintiff] succeeds in this case will be difficult and burdensome"); *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996) ("FOIA directs agencies to make information 'available to the public.'… Once records are released, nothing in FOIA prevents the requester from disclosing the information to anyone else.  The statute contains no provisions requiring confidentiality agreements or similar conditions." (internal citation omitted)).

### 1. Siemens

Siemens argues that 100Reporters seeks materials provided to the DOJ during the monitorship that contain commercially-sensitive information, the disclosure of which "would result in significant harm to Siemens."  *See* Siemens's Motion to Intervene 7.  In addition, Siemens provides that the Monitor's reports catalog and describe in detail all aspects of Siemens's compliance program, and public disclosure of those details would impair Siemens's ability to detect and prevent compliance issues moving forward, which also would substantially impair Siemens's interests.  *See id.* at 7-8.  In response, 100Reporters does not challenge Siemens's impairment analysis.  Regardless, the Court finds that Siemens's interests potentially could be impaired if the materials sought by 100Reporters are released.  *See, e.g.*, *Pub. Citizen*, 975 F. Supp. 2d at 116-17 (disclosure of materials containing an "extensive, probing" review of "confidential business systems and policies," as well as company's "internal structure and operations," would result in competitive harm to the company if disclosed); *Appleton II*, 310 F.

Supp. 2d at 197 ("[D]isclosures resulting from the disposition of this action could impair the applicants' ability to protect their trade secrets or confidential information.").

### 2. The Monitor

The public release of the Monitor's reports and related communications also might impair the Monitor's interest in maintaining the confidentiality of those materials for the same reasons that publication might impair Siemens's interest in confidentiality.  100Reporters does not challenge the Monitor's impairment claim, and the Court thus finds that the Monitor has satisfied this requirement.

### D.  Adequate Representation Of Interests

The Supreme Court has explained that the adequate representation "requirement of [Rule 24(a)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Fund for Animals*, 322 F.3d at 735-36. Similarly, the D.C. Circuit has described this requirement as "not onerous."  *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *see also AT&T*, 642 F.2d at 1293 (stating that an applicant "'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee'" (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1909 (1st ed. 1972))).

Although the intervenor and the government entity involved in the litigation frequently may agree on a legal position or course of action, the D.C. Circuit nonetheless "often [has] concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736.  This is primarily because the government entity's overarching "obligation is to represent the interests of the American people," while the

intervenor's obligation is to represent its own interests.  *Id.*  The divergence of interests, moreover, is especially evident in FOIA litigation, where this Court has recognized that the "plaintiff's interest lies in disclosure," the government entity's "interest lies in responding appropriately to the plaintiff's request," and the intervenor's interest lies "in protecting [its] trade secrets and confidential information."  *Appleton II*, 310 F. Supp. 2d at 197.

1.  Siemens

Siemens asserts that none of the existing parties in the underlying litigation shares its same incentive to protect its confidential and commercially-sensitive information from disclosure.  *See* Siemens's Motion to Intervene 8.  100Reporters argues, on the other hand, that Siemens and the DOJ currently hold "identical legal positions," in large part because the DOJ "has never repudiated its blanket denial of 100Reporters' FOIA Request."  Pl.'s Mem. Opp'n Motions to Intervene 8.  Thus, 100Reporters suggests that so long as the DOJ continues to seek the withholding of all documents responsive to the FOIA request, including by asserting FOIA Exemption 4, Siemens and the DOJ will share a "perfect harmony of interests," and there is "no reason to think" that the DOJ would not adequately represent Siemens's interests.  *Id.*  The Court disagrees.

100Reporters' analysis is inconsistent with the jurisprudence in this circuit regarding the adequate representation prong of Rule 24(a) in FOIA litigation.  First, as the Court just explained, Siemens's position is fully consistent with *Appleton II*'s holding that by the very nature of FOIA litigation, the government entity and the private intervenor will possess fundamentally different interests — the government is interested in fulfilling its FOIA obligations; the intervenor is interested in preventing disclosure of its confidential materials — such that the government entity is quite unlikely to provide "adequate representation."  *See*

17

*Appleton II*, 310 F. Supp. 2d at 197.  Second, the fact that Siemens and the DOJ presently agree on a litigation posture does not mean that the DOJ necessarily will adequately represent Siemens's interests throughout this action, as the DOJ remains free to change its strategy during the course of litigation.  *See Wildearth Guardians*, 272 F.R.D. at 19-20 (finding inadequate representation when, "although there are certainly shared concerns, it is not difficult to imagine how the interests of [the intervenor] and the other [federal] defendant[] 'might diverge during the course of litigation'" (citation omitted)).  Requiring Siemens to monitor the DOJ's litigation posture from the sidelines until Siemens disagrees with a decision by the agency is inefficient and impractical; indeed, Siemens likely would have limited, if any, insight into the DOJ's strategy during the litigation, and once Siemens did learn of a hypothetical shift in the DOJ's position, such as a decision to release a specific category of materials, it might be too late for Siemens to undue any damage done.[2]

In addition, even if the DOJ always maintains its present position that all materials sought by 100Reporters must be withheld, that "does not mean that [the DOJ] would afford the same primacy to [Siemens's] interests" during the litigation such that adequate representation exists.  *See id*. at 20 ("The mere fact that other defendants might hypothetically take [the intervenor's] interests into account when shaping their arguments does not mean that they would afford the same primacy to [the intervenor's] interests[.]").  This is especially true when the intervenor intends to raise an argument under FOIA Exemption 4 because, as this Court has explained, "[c]ourts have repeatedly rejected competitive harm claims [under Exemption 4] when they are advanced solely by the defendant agencies."  *Newry Ltd. v. U.S. Customs and Border Prot. Bureau*, No. Civ. 04-2110, 2005 WL 3273975, at *3-4 (D.D.C. July 29, 2005) (rejecting

---

[2]        It also might be too late for Siemens to intervene at all, as both Rule 24(a) and Rule 24(b) require a timely motion to intervene.

competitive harm argument advanced solely by agency), *reconsideration granted* (D.D.C. Mar. 30, 2006) (upholding competitive harm argument following agency's submission of supplemental declarations, including one from submitter); *see also Wiley Rein & Fielding v. U.S. Dep't of Commerce*, 782 F. Supp. 675, 676-77 (D.D.C. 1992) (rejecting competitive harm argument, ordering disclosure, and emphasizing that "no evidence" was provided to indicate that submitters objected to disclosure); *Brown v. U.S. Dep't of Labor*, No. 89-1220, 1991 U.S. Dist. LEXIS 1780, at *7 (D.D.C. Feb. 15, 1991) (denying competitive harm claim, ordering disclosure, and noting failure of submitters to object to disclosure); DOJ Guide to the Freedom of Information Act: Exemption 4 at 308 ("Courts have repeatedly rejected competitive harm claims — and even have ordered disclosure — when those claims were advanced by agencies on their own." (citing cases)).[3]  Thus, Siemens's presence in this litigation will ensure that, at the very least, its Exemption 4 argument is asserted as strongly as possible because Siemens is in a unique position to articulate the need to withhold its own confidential materials under that FOIA Exemption.

In sum, the DOJ has neither the incentives nor the information necessary to represent fully Siemens's commercial and competitive interests during this FOIA litigation.  Accordingly, even though such interests may indeed overlap at times, the Court finds that Siemens has satisfied the inadequate representation requirement.  *See, e.g.*, *Fund for Animals*, 322 F.3d at 737 (explaining that "partial congruence of interests … does not guarantee the adequacy of representation"); *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) ("[P]rivate companies can intervene on the side of the government, even if some of their interests converge[.]" (citations omitted)); *Am. Horse Protection Ass'n*, 200 F.R.D. at 159 ("[M]erely because parties

---

[3]   Available at http://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/exemption4_0.pdf.

share a general interest in the legality of a program or regulation does not mean their particular interests coincide so that representation by the agency alone is justified[.]" (citation omitted)).

## 2.  The Monitor

100Reporters asserts essentially the same arguments regarding the Monitor as it did about Siemens, namely that the DOJ's blanket refusal to disclose any documents demonstrates that the Monitor's interests are "fully encompassed within [the] DOJ's current position."  Pl.'s Mem. Opp'n Motions to Intervene 17.  Although the Monitor asserts a slightly different confidentiality interest than Siemens, the preceding analysis regarding inadequate representation still applies in full.  Indeed, like with Siemens, the Monitor and the DOJ presently share a common position as to 100Reporters' FOIA request: no materials should be released.  That alone, however, does not mean the DOJ will adequately represent the Monitor's interests as contemplated by Rule 24(a), especially when the Monitor intends to assert arguments under FOIA Exemption 4.  Thus, the Court finds that the Monitor has satisfied this "minimal" requirement.  *See Trbovich*, 404 U.S. at 538 n.10.

## E.  Standing And Ripeness

Having concluded that Siemens and the Monitor satisfy the four elements necessary for intervention as of right under Rule 24(a), the Court next turns to whether the proposed intervenors also have standing under Article III.  *See Fund for Animals*, 322 F.3d at 731-32; *Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994).  As the Court touched on above, the standing analysis for intervention as of right generally is treated as equivalent to determining whether the intervenor has a "legally protected" interest under Rule 24(a).  *See, e.g.*, *Jones*, 348 F.3d at 1018 ("Article III's 'gloss' on Rule 24 requires an intervenor to have a 'legally protectable' interest." (quoting *S. Christian Leadership Conference*, 747 F.2d

at 779)); *WildEarth Guardians*, 272 F.R.D. at 13 n.5 ("[W]hen a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*.").

In regard to the standing of an applicant seeking to intervene as a defendant, an additional wrinkle arises, namely that requiring standing for a proposed defendant-intervenor "runs into the doctrine that the standing inquiry is directed at those who invoke the court's jurisdiction," which, of course, defendants traditionally do not.  *Roeder*, 333 F.3d at 233 (citation omitted). Nonetheless, whereas *Roeder* merely highlighted this curiosity in passing, the D.C. Circuit recently took up the question more directly in *Deutsche Bank National Trust Co. v. FDIC*, 717 F.3d 189 (D.C. Cir. 2013), and held that the standing requirement for intervention as of right does not distinguish between plaintiff-intervenors and defendant-intervenors.[4]  *Id*. at 193.  As such, this Court must determine whether Siemens and the Monitor have standing to intervene as defendants, as well as whether the motions to intervene are fit for resolution under the related ripeness doctrine.

### 1.  Siemens

100Reporters argues that Siemens's motion to intervene is "premature," and the Court therefore should deny the motion, or at least hold the motion in abeyance, on both standing and ripeness grounds.  *See* Pl.'s Mem. Opp'n Motions to Intervene 6-11.  Specifically, 100Reporters asserts that until the DOJ finishes its review of the requested documents and completes its withholding analysis, Siemens presents only an "abstract" disagreement that requires further

---

[4]      *See also Deutsche Bank Nat. Trust*, 717 F.3d at 195-96 (Silberman, J., concurring) ("Opening participation to parties without standing would be quite troublesome in direct review in the court of appeals,… but intolerable at the district court level, where individual parties have substantial power to direct the flow of litigation and affect settlement negotiation[s].  Our rule requiring all intervenors to demonstrate Article III standing prudently guards against this possibility." (internal citation omitted)).

factual development to become ripe. *Id.* at 7-9.  For this same reason, 100Reporters also asserts

that it remains unclear whether the DOJ actually will release documents that implicate Siemens's

confidentiality interests such that Siemens cannot demonstrate a particularized and imminent

injury at this time. *See id.* at 10-11.  Although ripeness is "closely akin to the standing

requirement," *Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999),

the Court addresses these two jurisdictional questions separately.

*a. Ripeness*

"The ripeness doctrine generally deals with when a federal court can or should decide a

case." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012).  In assessing the

ripeness of a case, courts focus on two aspects: the "fitness of the issues for judicial decision,"

and the extent to which withholding a decision will cause "hardship to the parties." *Abbott Labs.*

*v. Garner*, 387 U.S. 136, 149 (1967).  Under the ripeness test, "if the interests of the court and

agency in postponing review outweigh the interests of those seeking relief, settled principles of

ripeness squarely call for adjudication to be postponed." *State Farm Mutual Auto. Ins. Co. v.*

*Dole*, 802 F.2d 474, 480 (D.C. Cir. 1986).

As a general matter, 100Reporters fails to cite any prior FOIA case in which a motion to

intervene was denied on ripeness grounds. *See* Pl.'s Mem. Opp'n Motions to Intervene 6-9.  In

fact, following 100Reporters' approach to ripeness would place the proposed intervenor in a

precarious position under Rule 24(a), which demands the *timely* filing of motions to intervene, as

generally measured from the commencement of the action and when the first responsive

pleadings are filed. *See Roane*, 741 F.3d at 151 (discussing timeliness under Rule 24(a)).  Thus,

if, as 100Reporters suggests, Siemens were forced to wait until the DOJ completes its document

review and withholding analysis — which in some cases takes many months or even years —

Siemens would risk the Court denying its Rule 24(a) motion as untimely.  Ripeness, then, immediately appears an unsuitable tool for resolving motions to intervene as of right in FOIA cases.

Second, as to the merits of the ripeness question, 100Reporters' analysis focuses exclusively on the fitness requirement, which "turns on whether a court's consideration of the case 'would benefit from further factual development.'"  *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1353 (D.C. Cir. 2014) (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).  100Reporters appears to suggest that this case will not be fit until the DOJ finishes its review of the requested documents, determines the exact scope of the document universe in dispute, completes its analysis of which documents must be withheld, and consults with 100Reporters to determine whether the plaintiff disagrees with the DOJ's arguments for withholding information.  *See* Pl.'s Mem. Opp'n Motions to Intervene 7-9.  Simply put, 100Reporters' argument asks for far too much before a motion to intervene could become fit.[5]

In particular, 100Reporters' analysis relies heavily on this Court's opinion in *Appleton v. FDA*, 254 F. Supp. 2d 6 (D.D.C. 2003) ("*Appleton I*"), which held in abeyance in part the defendant's motion to stay the plaintiff's FOIA claim and denied without prejudice the motions to intervene from five pharmaceutical manufactures.  *Id*. at 7.  The *Appleton I* Court reached this conclusion when it was "clear that there [was] some confusion between the parties as to the scope of the plaintiff's [FOIA] request," which, in turn, caused similar confusion within the motions to intervene because the applicants did not know exactly what records the plaintiff sought in the first place.  *Id*. at 10-11.  The Court therefore directed the parties to confer and

---

[5]      In fact, if 100Reporters' analysis were adopted, the Court posits whether a Rule 24(a) motion to intervene in a FOIA action ever would be fit before the action is settled or disposed of on the merits.

clarify the scope of the FOIA request, after which the applicants could file renewed motions to intervene.  *Id.* at 11.  And after the scope of the FOIA request was clarified, the Court granted the applicants' motions.  *See Appleton II*, 310 F. Supp. 2d at 197.

      *Appleton I* is not persuasive to the Court's analysis today for at least two reasons.  First, that case did not even mention standing or ripeness, so it offers no guidance on such jurisdictional questions, despite 100Reporters' suggestion to the contrary.  And second, unlike *Appleton I*, the contours of this case — especially "the scope of the plaintiff's [FOIA] request," *Appleton I*, 254 F. Supp. 2d at 10 — were abundantly clear from the moment the complaint was filed: 100Reporters seeks the production of six specific categories of documents relating to the corporate monitorship imposed on Siemens in 2008, *see* Compl. ¶ 22, and the DOJ has asserted that all materials within those categories are exempt from disclosure.  *See* DOJ Answer ¶ 6. Though the DOJ may continue to develop its legal arguments against disclosure and further refine the document universe, the essential facts of this case are settled, well-defined, and fit for judicial review.  As such, the Court rejects 100Reporters' ripeness challenge.[6]

### b.  Standing

      "It is axiomatic that Article III requires a showing of injury-in-fact, causation, and redressability."  *Deutsche Bank Nat. Trust*, 717 F.3d at 193.  In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court described the injury-in-fact element as requiring a showing of an invasion of a legally protected interest that is (a) concrete and particularized, and

---

[6]    Taking 100Reporters' ripeness argument a step further, if this theory were accepted, the Court also might be required to dismiss the underlying complaint on ripeness grounds as well.  100Reporters suggests that at this point in the litigation, there exists only an "abstract disagreement," Pl.'s Mem. Opp'n Motions to Intervene 7, and that it remains unclear if 100Reporters "would actually disagree with [the DOJ's assertion of] any particular Exemption for any particular document."  *Id.* at 10.  If true, further factual development appears critical before judicial resources should be spent on this case, thus potentially making the entire litigation unfit.

(b) actual or imminent, not conjectural or hypothetical.  *Id*. at 560.  For similar reasons as its ripeness argument, 100Reporters asserts that Siemens's injury in the potential disclosure of its confidential documents is speculative and not imminent, mainly because 100Reporters still may agree with the DOJ's withholding claims such that Siemens's documents might not actually be released.  *See* Pl.'s Mem. Opp'n Motions to Intervene 7-8.  Once again, 100Reporters demands far too much.

When, as here, it is clear that the FOIA requestor seeks the release of documents that are likely to contain the intervenor's confidential information, the intervenor's injury is both particularized and sufficiently imminent.  It is not surprising, then, that 100Reporters cannot cite a single FOIA case in which a court denied on standing grounds the application of a prospective intervenor whose *own* confidential materials were the clear subject of the FOIA request.[7] Instead, though there always exists significant overlap between Rule 24(a)'s interest requirement and Article III's injury-in-fact requirement, *see Fund for Animals*, 322 F.3d at 735, that likely never is truer than in a situation such as this, where the imminent and concrete risk of the proposed intervenor's confidential materials being released through a successful FOIA action is obvious.  *See Appleton II*, 310 F. Supp. 2d at 197 (concluding that "[a]s for standing, the applicants have shown that FDA's disclosure of their trade secrets or confidential information would cause them to suffer an injury-in-fact that intervention to defend against disclosure could

---

[7]        100Reporters cites to *Schoenman v. FBI*, 263 F.R.D. 23 (D.D.C. 2009), as an example of a court denying a motion to intervene as of right on standing grounds.  *See* Pl.'s Mem. Opp'n Motions to Intervene 6.  *Schoenman*, however, offers nothing helpful to the Court's present analysis.  There, the district court denied the *pro se* inmate's motion to intervene under Rule 24(a) and on Article III standing grounds (and under Rule 24(b) as well) because, among other things, the motion was filed five years after the suit commenced and the inmate offered no explanation about his own interest in the case that might satisfy Rule 24(a) or Article III.  *Id*. at 25-26 (applicant "has not set forth any specific interest with respect to the instant FOIA action" and has "made no effort to demonstrate that he has standing under Article III").  Clearly, Siemens and the Monitor have offered such arguments here.

redress"); *cf. Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 367 (D.C. Cir. 2005)

("Venetian has standing, because it has demonstrated that there is a substantial probability that

the alleged disclosure policy will harm its concrete and particularized interest in retaining the

confidentiality of protected information."). The Court therefore finds that Siemens has

established Article III standing to intervene as a defendant in this litigation.[8]

### 2.  The Monitor

In its Rule 24(a) analysis, the Court addressed most of 100Reporters' standing arguments

as to the Monitor, and little additional consideration is required here for two reasons.[9] First, like

Siemens, the Monitor has a concrete and particularized interest in maintaining the confidentiality

of the reports and related communications that 100Reporters seeks from the DOJ. And second,

again like Siemens, the risk of injury to the Monitor's interest is imminent given the well-defined

scope of 100Reporters' FOIA request and the clear possibility of the Monitor's materials being

released if 100Reporters is successful in this litigation. The Court therefore finds that the

Monitor also has standing to intervene.

### F.  Proposed Limitations On Siemens's Participation

Finally, "[e]ven where the Court concludes that intervention as a matter of right is

appropriate, its inquiry is not necessarily at an end: district courts may impose appropriate

conditions or restrictions upon the intervenor's participation in the action." *Wildearth

Guardians*, 272 F.R.D. at 20; *see also* Fed. R. Civ .P. 24(a) advisory comm.'s note on 1966

---

[8]    100Reporters does not challenge Article III's redressability and causation requirements, and the Court finds that such elements are clearly satisfied by both Siemens and the Monitor.

[9]    100Reporters' argument as to the Monitor appears to rely only on standing, not ripeness. Such arguments overlap, however, and to the extent 100Reporters is suggesting that the Monitor's motion to intervene also is not ripe, the Court rejects that claim for the same reasons as were applied to Siemens.

amend. ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").  Here, 100Reporters argues that even if the Court were to permit Siemens to intervene as of right, the Court should limit Siemens's involvement in this action to arguing its interests under FOIA Exemption 4 only.  *See* Pl.'s Mem. Opp'n Motions to Intervene 11-12. 100Reporters makes this argument in reliance on Rule 24(c)'s requirement that the motion to intervene "must state the grounds for intervention," and 100Reporters then offers that Siemens's motion only asserts an interest in preventing disclosure of its confidential and sensitive commercial information, which is an interest specifically protected by Exemption 4, regardless if Siemens also pleads other defenses in its answer.  *See id.* (citing Siemens's Motion to Intervene 1).

But the cases on which 100Reporters relies are inapplicable to the present issue here, as those cases do not address Rule 24(c), or even intervention in general.  *Cf. id.* at 12 (citing *David v. District of Columbia*, 436 F. Supp. 2d 83, 90 n.2 (D.D.C. 2006) (arguments not raised in defendants' *motion for judgment as a matter of law* cannot be raised in defendants' reply brief); *Gold v. Wolpert*, 876 F.2d 1327, 1333 (7th Cir. 1989) (refusing to hear "unanalyzed and undeveloped claims" raised in party's *appellate brief*)).  Rather, the correct approach, in this Court's view, is to follow the general rule that "[i]n this circuit … an intervenor participates on equal footing with the original parties to a suit," *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009) (internal citation and quotation omitted), with the exception being that the Court may impose restrictions on an intervenor that are "reasonable and … of a housekeeping nature."  7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1922 at 630 ("It seems very doubtful … that the court has the right to make

significant inroads on the standing of an intervenor of right; in particular, it should not be allowed to limit the intervenor in the assertion of counterclaims or other new claims." (footnotes omitted)); *see also Beauregard v. Sword Servs. LLC*, 107 F.3d 351, 352-53 (5th Cir. 1997) ("Although not without some controversy, it is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right" (citations omitted)).

Ultimately, then, the Court must ensure "that any conditions imposed should be designed to ensure the fair, efficacious, and prompt resolution of the litigation," while also being consistent with the "two conflicting goals of intervention: [] to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending." *Wildearth Guardians*, 272 F.R.D. at 20 (internal citation and quotation omitted). Thus, 100Reporters is mistaken to rely on unrelated cases in an attempt to construe Rule 24(c) as imposing some form of draconian use-it-or-lose-it pleading standard on prospective intervenors before they even formally join the litigation. *Cf. Butler v. White*, No. CV 11-574, 2014 WL 4436301, at *2 (D.D.C. Sept. 8, 2014) ("'[T]he spirit of the Federal Rules [is to] facilitate a proper decision on the merits' rather than making 'pleading a game of skill in which one misstep by counsel may be decisive to the outcome.'" (quoting *Foman v. Davis*, 371 U.S. 178, 181-12 (1962)). To the contrary, a more functional and practical approach is required, and fatally, 100Reporters fails to offer any concrete or realistic consequences to this litigation from Siemens's (or the Monitor's) intervention that might require the Court to impose a limitation on the scope of the defenses that an intervenor may raise as this case, which still is in its infancy, proceeds to the merits. *Cf. Dacotah Chapter of Sierra Club v. Salazar*, No. 1:12-CV-065, 2012 WL 3686742, at *3 (D.N.D. Aug. 27, 2012) (refusing to impose limits on intervenor, such as a joint filing requirement, a preemptive restriction on the

intervenor's ability to present issues to the court, and page limitations for briefs, because such restrictions would be "arbitrary and unnecessarily punitive").  Accordingly, the Court denies 100Reporters' request to impose limitations on any intervenor at this time.[10]  *See The Wilderness Soc. v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) ("Because the Court agrees that the purposes of Rule 24 are best served by permitting the prospective intervenors to engage in all aspects of this litigation, both motions to intervene will be granted without limitation.").

*          *          *

In sum, the Court finds that both Siemens and the Monitor have filed timely motions to intervene, that both applicants possess interests in the subject of this action that would be impaired if intervention were denied, and that these interests are not adequately represented by the DOJ.  Further, Siemens and the Monitor have standing to represent their interests in this litigation as intervenor-defendants, and the motions to intervene are not premature or unripe. Accordingly, the Court concludes that Siemens and the Monitor have satisfied the requirements under Rule 24(a) and Article III, and both applicants therefore are entitled to intervene as a matter of right and without limitation.[11]

## IV.  ANALYSIS: PERMISSIVE INTERVENTION

Alternatively, the Court finds that both Siemens and the Monitor also are entitled to intervene under the permissive intervention standard in Rule 24(b), which gives the Court

---

[10]     To the extent 100Reporters believes that the intervenors are causing actual delays or other hardships as this litigation moves forward, the plaintiff may raise such concerns then.

[11]     The Court again emphasizes that many FOIA Exemptions appear to protect governmental interests only.  Thus, although the Court of course will entertain all parties' arguments regarding each potentially applicable FOIA Exemption, it remains uncertain that a private party can prevent disclosure by asserting a governmental interest that the Government itself does not assert, such as Exemption 7(A).

discretion, on a timely motion, to "permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).  When exercising this discretion, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  Here, it is clear that Siemens and the Monitor raise common questions of fact and law in their motions to intervene and their proposed answers to 100Reporters' complaint.  Indeed, given the similarities between the issues presented by Siemens and those raised by the DOJ, 100Reporters has asserted that the "DOJ and Siemens currently hold identical legal positions."  Pl.'s Mem. Opp'n Motions to Intervene 8.  The same holds true for the Monitor, whose "position against disclosure is fully encompassed with [the] DOJ's current position."  *Id*. at 17.

100Reporters also suggests that the Monitor's permissive intervention would unduly delay the litigation because the DOJ is "aggressively representing each of the interests that Dr. Waigel has asserted in his intervention motion."  *Id*. at 18.  Given this overlap, 100Reporters offers that the "addition of another party to this lawsuit to assert cumulative defenses would only delay the proceedings, multiply the litigation burdens on 100Reporters, and hinder any prospect of settlement."[12]  *Id*.  Though the Court agrees that the DOJ can represent capably many of the interests asserted by the Monitor, the Court also has found that, first, the strength of the DOJ's position will be enhanced by the assistance of the Monitor (and Siemens) in asserting FOIA

---

[12]      Here, 100Reporters cites *Environmental Defense Fund, Inc. v. Costle*, 79 F.R.D. 235 (D.D.C. 1978), for the proposition that the Court should deny permissive intervention when the intervenor will present "cumulative arguments."  *See* Pl.'s Mem. Opp'n Motions to Intervene 18.  *Environmental Defense Fund*, however, addressed the adequate representation prong of intervention as a matter of right under Rule 24(a), not permissive intervention under Rule 24(b). *See Environmental Defense Fund*, 79 F.R.D. at 243 (explaining that the proposed intervenor's "arguments directed at the subject matter of this case will be cumulative of the arguments advanced by the other defendants," and the Court therefore "is of the opinion that [the proposed intervenor] is adequately represented in this case, and the *motion to intervene as of right* is accordingly denied." (emphasis added)).

withholding arguments generally and Exemption 4 withholding arguments specifically, and second, the DOJ does not share the same fundamental interest in preventing disclosure that the Monitor (and Siemens) possesses because the DOJ's primary loyalty lies in carrying out its requirements under FOIA, not blocking the release of materials.

Finally, the Court finds no basis to conclude that the presence of either intervenor will "delay or unduly complicate" the proceedings in this relatively standard FOIA litigation, "which is progressing in orderly fashion towards probable cross-motions for summary judgment." *Agee v. CIA*, 87 F.R.D. 350, 352 (D.D.C. 1980) (granting motion to intervene under Rule 24(b)).  The proper approach, rather, is to allow all interested parties to present their arguments in a single case at the same time, especially when the intervenors have timely moved to join this litigation at such a nascent stage — before the Court even has held a status conference to discuss whether to set a briefing schedule for dispositive motions, let alone the actual filing of the dispositive motions themselves.  *Cf. Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010) (finding, in the alternative, that permissive intervention is proper when "the plaintiff does not argue nor does this court conclude that the timing of the petitioner's motion to intervene, filed before the scheduling of the initial status hearing, has prejudiced its case").  The Court therefore concludes that both Siemens and the Monitor are entitled to permissive intervention under Rule 24(b) as well.

## V.  CONCLUSION

For the foregoing reasons, Siemens's and the Monitor's motions to intervene are **granted**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 3, 2014                                   RUDOLPH CONTRERAS
                                                           United States District Judge