UNTED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

100 REPORTERS LLC, )
)
Plaintiff, )
)
v. ) Civil Action No. 14-1264 RC
)
UNITED STATES )
DEPARTMENT OF JUSTICE, )
)
Defendant. )

**DECLARATION OF TRACY PRICE**

I, Tracy Price, declare pursuant to Title 28, United States Code, Section 1746 as follows:

1. I am an Assistant Director of the Enforcement Division of the Securities and Exchange Commission, a position I have held since 2010. I work in the Foreign Corrupt Practices Act ("FCPA") Unit of the Enforcement Division. My duties as Assistant Director in the FCPA Unit include investigating and supervising investigations of companies and individuals who violate the federal securities laws, in particular the FCPA. I make this declaration based on my own personal knowledge and on information made available to me in the performance of my official duties.

2. On December 15, 2008, Siemens AG ("Siemens"), a multinational manufacturer of industrial and consumer products based in Munich, Germany, reached a settlement of a civil complaint filed by the SEC charging it with violating the anti-bribery, books and records, and internal accounting controls provisions of the FCPA arising out of its systematic practice of paying bribes to foreign government officials to obtain business. *Securities and Exchange Commission v. Siemens Aktiengesellschaft*, Case No. 08-cv-02167 (RJL) (D.D.C.), dkt. entry 3 at

1

¶4) The complaint alleged that Siemens paid bribes on a wide variety of transactions, including the design and construction of metro transit lines in Venezuela, metro trains and signaling devices in China, power plants in Israel, high voltage lines in China, refineries in Mexico, mobile telephone networks in Bangladesh, telecommunications projects in Nigeria, national identity cards in Argentina, traffic control systems in Russia, mobile communications networks in Vietnam, and medical devices in Vietnam, China, and Russia. (Case No. 08-cv-02167, dkt. entry 3 at ¶2). According to the complaint, Siemens also paid kickbacks to Iraqi ministries in connection with sales of power stations and equipment to Iraq under the United Nations Oil for Food Program. *Id.* Siemens earned more than $1.1 billion in profits on these and numerous other transactions. *Id.*

3. Siemens settled the SEC civil suit without admitting or denying the allegations of the complaint. Under the Final Judgment in the case, Siemens was enjoined from violating the FCPA and ordered to disgorge $350 million of profits relating to the FCPA violations. (Case No. 08-cv-02167, dkt. entry 4, at V). Also, the Final Judgment required Siemens to engage an independent compliance monitor ("Monitor") for up to four years. (*Id.*, at IV.1).

4. The same day Siemens resolved the civil case, it also pleaded guilty to a 2-count information charging it with violating the provisions of the FCPA concerning books and records and internal accounting controls and agreed to retain an independent compliance monitor for up to four years. (*See United States v. Siemens Aktiengesellschaft*, Case No. 08-cr-367 (RJL) (D.D.C.)). SEC staff understood that Siemens would hire the same Monitor to carry out the independent monitorship required by both the civil settlement and criminal plea agreement. SEC staff further understood that the Monitor would provide reports to both the SEC, pursuant to the Final Judgment, and to DOJ, pursuant to the criminal proceeding. Dr. Theo Waigel, a former

Minister of Finance of Germany, served as the Monitor for both the SEC action and the criminal action. Siemens retained Dr. Waigel on January 12, 2009, and his term ended on December 15, 2012. The Final Judgment also required Siemens to engage a U.S. lawyer as independent U.S. counsel to the Monitor. (Case No. 08-cv-02167, dkt. entry 4, at IV.1).

5. According to the Final Judgment, the Monitor's mandate was "to evaluate … the effectiveness of Siemens' internal controls, record-keeping, and financial reporting policies and procedures as they relate to Siemens' current and ongoing compliance with the books and records, internal accounting controls and anti-bribery provisions of the FCPA . . . ." (Case No. 08-cv-02167, dkt. entry 4, at IV.1). Siemens was required to cooperate fully with the Monitor, providing him with access to all information, documents, records, facilities and/or employees as reasonably requested by the Monitor within the scope of his mandate. (*Id.*, at IV.2).

6. To carry out his mandate, the Monitor was to conduct yearly reviews and make yearly reports to the SEC and Siemens AG. (Case No. 08-cr-02167, dkt. entry 4, at IV.3). For each review, the Monitor was required to prepare a written work plan. (*Id.*). Thereafter, the Monitor was to issue a written report setting forth his assessment and making recommendations reasonably designed to improve the effectiveness of Siemens' program for ensuring compliance with the anti-corruption laws. (*Id.*, IV.4). Siemens was obligated to adopt all of the Monitor's recommendations, subject to a right of appeal to the SEC if it deemed a recommendation unduly burdensome, unlawful or impractical. (*Id.*, IV.5).

7. In accordance with the Final Judgment, the Monitor conducted an initial review and three subsequent reviews of Siemens' anti-corruption program, and documented his findings and recommendations in four annual reports in October 2009, October 2010, October 2011, and October 2012. The Monitor provided the reports to both the SEC and DOJ.

8.     The Monitor made approximately 152 recommendations in over a dozen topic areas, such as third-party risks, financial controls, and compliance policies and training that, pursuant to the Final Judgment, were "reasonably designed to improve the effectiveness of Siemens' compliance program for ensuring compliance with the anti-corruption laws." (Case No. 08-cr-02167, dkt. entry 4, IV.6). Thereafter, the Monitor confirmed that Siemens had fully implemented all of those recommendations and certified Siemens compliance program, pursuant to the Final Judgment. (*Id.*, IV.6).

9.     Throughout the four-year monitorship, SEC staff reviewed the Monitor's work plans, reports and other submissions, and received periodic briefings from the Monitor and his U.S. independent counsel. (Case No. 08-cr-02167, dkt. entry 4, IV.10). SEC staff understood that the records and information it was obtaining from the Monitor were considered confidential. SEC staff relied on these records and the information obtained from the briefings to determine whether Siemens was complying with its obligations under the Final Judgment, including whether Siemens' compliance program was reasonably designed and implemented to detect and prevent violations of the anti-corruption laws, and that further monitoring and review pursuant to the Final Judgment were no longer warranted. (*Id.*, IV.6). The Monitor's work plans, reports and other submissions, and periodic briefings from the Monitor and his U.S. independent counsel provided the SEC staff with detailed information about Siemens' compliance program and its effectiveness, based in part on the Monitor's inspection of Siemens' anti-corruption policies and procedures, on-site observations of selected systems and procedures of Siemens at sample sites, interviews of Siemens employees, officers, and directors, and analyses, studies and testing of Siemens' compliance program with respect to the anti-corruption laws. (Case No. 08-cr-02167, dkt. entry 4, IV.7).

10. After reviewing the Monitor's final report certifying that Siemens' compliance program, including its policies and procedures, was reasonably designed and implemented to detect and prevent violations within Siemens of the anti-corruption laws, the SEC staff determined that Siemens met the terms of the monitoring provision of the Final Judgment. (Case No. 08-cr-02167, dkt. entry 4, IV.6). The SEC staff informed DOJ that Siemens satisfied the terms of the monitoring provision of the Final Judgment. The DOJ notified SEC staff that it had reached a similar conclusion, and that DOJ intended to file a notice with the court in the criminal proceeding concluding that Siemens had met its obligations under the plea agreement.

11. The SEC and DOJ engaged in a parallel FCPA investigation of Siemens. The SEC and DOJ coordinated their meetings and discussions with the Monitor and his U.S. counsel to allow the SEC and DOJ to further their respective parallel reviews of Siemens compliance with its obligation under the Final Judgment and criminal proceeding. Disclosing communications between the SEC and DOJ could have a detrimental effect on the SEC's ability to effectively investigate potential security laws violations and compliance with Final Judgments in parallel cases.

12. Having companies consent to monitors in connection with settlements regarding FCPA violations is valuable to the SEC because, as detailed in paragraphs 7 through 9 above with respect to Siemens, monitorships help the SEC to ensure that corporate wrongdoers are deterred from committing future violations and are being rehabilitated. Monitors also help the SEC to ensure that wrongdoers are fulfilling their duty to cooperate with the SEC and implement effective systems of corporate governance and compliance programs.

13. Release of the documents submitted by the Monitor would likely cause companies who agree to a monitorship to be less forthcoming with their information and not provide full

disclosure of potentially confidential business information to monitors. A monitor's ability to determine whether information is accurate and reliable would be limited if it did not have full access to relevant information. In addition, the SEC has a compelling interest in receiving detailed and reliable information from monitors and companies, like Siemens, so that it can ensure that such companies are working toward implementing effective and efficient compliance programs with respect to compliance with the anti-corruption laws. Receiving limited or unreliable information about companies' compliance efforts would lead to ineffective monitoring of compliance programs and hinder the SEC's ability to determine the adequacy of a company's compliance program with respect to the anti-corruption laws.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this __14__ day of March 2016.

Tracy Price
Assistant Director, Enforcement Division