# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 100REPORTERS LLC )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES DEPARTMENT OF JUSTICE, )<br><br>Defendant, )<br><br>and )<br><br>SIEMENS AKTIENGESELLSCHAFT and )<br>DR. THEO WAIGEL, )<br><br>Defendant-Intervenors. ) | Civil Action No. 14-1264 (RC) |

## CONSOLIDATED REPLY IN SUPPORT OF MONITOR'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant-Intervenor Dr. Theo Waigel, the independent corporate compliance monitor to Siemens Aktiengesellschaft ("the Monitor"), respectfully submits this consolidated reply in support of his motion for summary judgment (Dkt. 57) and opposition to Plaintiff's cross-motion for summary judgment (Dkts. 62, 63).

FOIA Exemption 5 protects from disclosure the Government's confidential deliberations and decision-making process, including—under the "consultant corollary"—documents provided to the Government by third party consultants as part of that process. In arguing that this exemption does not apply to the monitorship materials at issue here, Plaintiff fails to address the supporting declarations supplied by the Monitor, the DOJ, and the SEC, all of which show that the monitorship materials were essential to the Government's decision-making. Plaintiff also

ignores authorities in the Monitor's opening brief.[1]  Summary judgment should be granted in

Defendants' favor for the reasons set out below and in their opening briefs.

Plaintiff advances three contentions in attempting to argue that Exemption 5 does not

apply.  All of these arguments should be rejected.

First, Plaintiff argues that the DOJ has failed to identify "policy-making activity" by the

DOJ.  Dkt. 62 at 32.  Therefore, according to Plaintiff, the monitorship materials cannot be

considered "predecisional, i.e., 'antecedent to the adoption of agency policy' *and* deliberative,

i.e., 'actually . . . related to the process by which policies are formulated.'"  *Id.* at 36 (quoting

*Playboy Enters., Inc. v. DOJ*, 516 F. Supp. 233, 239 (D.D.C. 1981) (ellipsis in original)

(emphasis added), *aff'd in part, modified in part*, 677 F.2d 931 (D.C. Cir. 1982).

But as Defendants' declarations show, the monitorship materials implicated the DOJ's

policies regarding Foreign Corrupt Practices Act investigation, prosecution, and monitorship;

indeed, consideration and application of these policies were paramount, as the Siemens case

represented the largest enforcement action and resolution in FCPA history.  *See, e.g.*, Moberly

Decl. ¶ 19; Helou Decl. ¶ 11.  Additionally, the documents implicated related policies regarding

the broader use of corporate compliance monitors as a tool for reducing recidivism of corporate

crime.  *See* Dkt. 57-1 at 16.  The DOJ and SEC declarations clearly explain how the agencies'

deliberations and the monitorship materials related to these policies.

---

[1]  Indeed, Plaintiff barely acknowledges the Monitor's opening brief and supporting authorities at all, stating only in passing that "[although] the Monitor provides a somewhat more thorough argument [than the DOJ] as to why his role is similar to an actual consultant, he likewise fails to show he fits within the limited extension of the narrow Exemption 5."  Dkt. 62 at 34; *see also id.* at 27, 33 (citing the Warin Declaration only twice—as parallel citations for references to the Kirsch and Helou Declarations).  In ignoring the Monitor's opening brief, Plaintiff also ignores all of the governing authorities and supporting evidence discussed therein.  Having failed to respond to the Monitor's arguments, Plaintiff has conceded them.  *E.g.*, *Robinson v. CAS 4000 Kansas LLC*, 5 F. Supp. 3d 108, 115 (D.D.C. 2013).

Plaintiff also fails to address the cases showing that Exemption 5 applies to documents like those at issue here.  Work plans, status reports, briefings, opinions, papers, and proposals to the Government are routinely exempted from disclosure as related to formulation of policy decisions.  *E.g.*, *Citizens for Responsibility & Ethics in Wash. v. DHS*, 514 F. Supp. 2d 36, 45-46 (D.D.C. 2007).  Such documents "contain[] the opinions, speculations, suggestions, updates, corrections, and proposed plans involved in the decision-making process . . . [and] disclosure of such information would stifle the candor necessary in an agency's policy making process," necessitating the application of Exemption 5.  *Hornbostel v. Dept. of Interior*, 305 F. Supp. 2d 21, 31 (D.D.C. 2003), *aff'd*, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004).  The materials authored and submitted by the Monitor are of this very sort, comprising work plans, reports, recommendations, presentations, and other documents and communications that facilitated the DOJ's and SEC's deliberative process of evaluating whether Siemens was complying with its obligations under the settlement agreements and the anti-corruption laws.  *See, e.g.*, Dkt. 57-1 at 6-8, 12.

Second, Plaintiff argues that because the Monitor was not hired or paid by the Government through a formal consulting engagement with the Government, the consultant corollary to Exemption 5 does not apply.  *See* Dkt. 62 at 33-35.  But again, Plaintiff ignores the authorities in the Monitor's opening brief showing that courts take a functional approach to the consultant corollary.  The test is *not* whether a formal consultant agreement exists, *see* Dkt. 57-1 at 16-19; instead, "the pertinent element is the role, if any, that the document [authored by the person or entity] plays in the process of agency deliberations," *Nat'l Inst. of Military Justice v. DOD*, 512 F.3d 677, 681 (D.C. Cir. 2008) (citation omitted).  As those cases show, numerous courts have applied the consultant corollary of Exemption 5 to protect materials authored and

3

submitted by a wide range of third parties—including, but not limited to, consultants, experts, private contractors, and attorneys—regardless of whether these persons have a formal consulting agreement with the Government.  *See, e.g.*, *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10 (2001) (collecting cases).  "[C]ourts have allowed agencies to protect advice generated by a wide range of outside experts, regardless of whether these experts provided their assistance pursuant to a contract, on a volunteer basis, or in some other capacity." Exemption 5, Department of Justice Guide to the Freedom of Information Act, at 359-60 nn.20-22 (collecting cases).  As the D.C. Circuit has ruled, "what matters is the nature of the relationship between the consultant and the agency, not the formalities observed."  *Nat'l Inst. of Military Justice*, 512 F.3d at 687.  This functional approach serves the fundamental purposes of the deliberative process privilege and Exemption 5 by protecting the Government's decision-making process; it matters not, in advancing this goal, how the Government's arrangement with a third party like the Monitor is documented or funded.  Here, the Court-approved settlement agreements, agreed to by the DOJ and the SEC, required the Monitor to be hired and paid by Siemens rather than the DOJ or the SEC, so that Siemens (and not taxpayers) would foot the bill for the Monitor's work.  *See, e.g.*, Plea Agreement ¶ 12, *United States v. Siemens Aktiengesellschaft*, No. 08-367 (D.D.C. Dec. 14, 2008), ECF No. 14.  There is no basis for Plaintiff's argument that this structure, which serves the policies and interests that the monitorship was set up to facilitate, can be used as a basis to override the Government's deliberative process.

Third, Plaintiff asserts that the DOJ waived the deliberative process privilege because the Monitor shared some of the monitorship materials with Siemens.  Dkt. 62 at 35.  However, governing authority—including the three cases cited by Plaintiff—shows only that *voluntary*

disclosure to an *unnecessary* third party results in waiver of the deliberative process privilege. Plaintiff cannot demonstrate that such disclosure occurred here, because disclosure to Siemens was both *necessary* and *required* under the settlement agreements.

Plaintiff's cases do not show, as Plaintiff attempts to suggest, that disclosure of deliberative materials to any third parties results in waiver. "The [D.C.] Circuit has recognized that 'voluntary disclosure of privileged material . . . to *unnecessary* third parties . . . waives the [deliberative process] privilege . . . . for the document or information specifically released . . . .'" *Elec. Frontier Found. v. DOJ*, 890 F. Supp. 2d 35, 46 (D.D.C. 2012) (quoting *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (per curiam)) (alterations altered) (emphasis added). Thus, to show that there was a waiver, Plaintiff "must prove that the disclosure . . . was not necessary to effect the purposes of the document." *Shell Oil Co. v. IRS*, 772 F. Supp. 202, 208 (D. Del. 1991) (discussing *Education/Instruccion, Inc. v. U.S. Dep't of Housing & Urban Dev.*, 471 F. Supp. 1074 (D. Mass. 1979))[2]; *see also Cooper v. Dep't of Navy*, 558 F.2d 274, 278 (5th Cir. 1977) ("[L]imited disclosures to proper outside persons as are necessary to carry out effectively a purpose for assembling a governmental report in the first place do not waive its privilege." (citation omitted)). Plaintiff cannot do so here, because Siemens was a *necessary* third party given the purpose of the monitorship and the requirements of the settlement agreements. Instead, not disclosing the reports to Siemens would have undermined the Government's deliberative process.

---

[2] The *Shell* court noted that "[b]ecause we are not dealing here with documents whose disclosure might be 'necessary to effect the purposes of the document,' we will not expand upon this concept . . . [but] we are in no way attempting to require disclosure of documents in the 'necessary to effect the purposes' category." 772 F. Supp. at 208 n.5.

Nor can Plaintiff show that disclosure to Siemens was "voluntary" given that the Court-approved settlement agreements *required* the Monitor to submit his work plans and reports to the Company.  *See, e.g.*, Statement of Offense as to Defendant Siemens Aktiengesellschaft, Attachment 2 ¶ 3, *United States v. Siemens Aktiengesellschaft*, No. 08-367 (D.D.C. Dec. 15, 2008), ECF No. 15 ("[T]he Monitor shall prepare a written work plan, which shall be submitted no fewer than sixty (60) calendar days prior to commencing each review to Siemens and the [DOJ and SEC] for comment . . . ."), ¶ 4 ("The Monitor shall provide the report[s] to the Managing Board of Siemens AG and contemporaneously transmit copies to" the DOJ and the SEC).  For waiver of the deliberative process privilege to occur, the disclosure of the contested materials to a third party must have been voluntary.  *See, e.g.*, *Mobil Oil Corp. v. EPA*, 879 F.2d 698, 700-01 (9th Cir. 1989) ("Voluntary disclosure of documents, either in whole or in part, to third parties has sometimes been held to waive FOIA exemptions for those documents."); *Mead Data Central, Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977).  When such disclosure is compelled, the disclosure is not voluntary and waiver does not occur.  *Fla. House of Representatives v. Dep't of Commerce*, 961 F.2d 941, 946 (11th Cir. 1992).  Here, the settlement agreements themselves, ratified by the Court, compel the sharing of the documents with Siemens and indicate the importance of doing so to facilitate both the Company's compliance efforts and the Government's evaluations and deliberations about those efforts.  These communications were a necessary and required part of the monitorship.  *See* Dkt. 57 at 19.  Accordingly, Plaintiff's waiver argument should be rejected.

For the foregoing reasons and those provided in the opening brief, the Court should grant the Monitor's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary

Judgment in this action.  These materials were properly withheld under multiple exemptions,

including FOIA Exemption 5.


Dated:  August 16, 2016                              Respectfully submitted,

                                                    ____/s/ Geoffrey M. Sigler_____
                                                    F. Joseph Warin (D.C. Bar No. 235978)
                                                    Geoffrey M. Sigler (D.C. Bar No. 478390)
                                                    Jeffrey S. Rosenberg (D.C. Bar No. 995893)
                                                    GIBSON, DUNN & CRUTCHER LLP
                                                    1050 Connecticut Avenue, N.W.
                                                    Washington, D.C.  20036
                                                    Telephone: (202) 887-3752
                                                    E-mail:  fwarin@gibsondunn.com
                                                    E-mail:  gsigler@gibsondunn.com
                                                    E-mail:  jsrosenberg@gibsondunn.com

                                                    *Counsel for Defendant-Intervenor Monitor*