## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **100REPORTERS LLC,**  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>**UNITED STATES**  )<br>**DEPARTMENT OF JUSTICE,**  )<br><br>Defendant,  )<br><br>**SIEMENS AKTIENGESELLSCHAFT,**  )<br><br>Defendant-Intervenor,  )<br><br>**THEO WAIGEL,**  )<br><br>Defendant-Intervenor.  ) | Civil Action No. 14-1264 (RC) |

## PLAINTIFF'S REPLY IN SUPPORT OF
## <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>

DAVIS WRIGHT TREMAINE LLP
Ronald G. London – Bar No. 456284
Adam Shoemaker – Bar No. 998763
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20006

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

I.   DEFENDANTS HAVE NOT SHOWN THAT WITHHOLDING IS JUSTIFIED
     UNDER EXEMPTION 4.............................................................................................. 4

     A.   DOJ Has Provided Insufficient Detail to Exempt Documents from
          Disclosure Under Exemption 4 ..............................................................................4

     B.   DOJ Has Failed to Show that Disclosure Would Impair Its Ability to
          Obtain Reliable Information Or Effectively Enforce the Laws .............................7

     C.   Defendants' Claims of Competitive Harm Are Insufficient to Justify
          Non-Disclosure ....................................................................................................11

II.  DEFENDANTS HAVE NOT SHOWN THAT WITHHOLDING IS JUSTIFIED
     UNDER EXEMPTION 5............................................................................................ 14

     A.   The Defendants Have Not Shown that the Monitor's Work Falls Within
          the Consultant Corollary ......................................................................................14

     B.   DOJ Has Not Provided Sufficient Detail to Sustain its Exemption 5
          Deliberative Process Claims .................................................................................16

III. DEFENDANTS HAVE NOT SHOWN THAT WITHHOLDING IS JUSTIFIED
     UNDER EXEMPTIONS 6 AND 7(C) ........................................................................ 17

     A.   The Materials Are Not Exempt as Records Compiled for a Law
          Enforcement Purpose ...........................................................................................17

     B.   The Categorical Non-Disclosure of the Names and Identifying Details of
          Government Personnel and Siemens Employees Is Not Justified Under
          Exemption 6 or 7(C) .............................................................................................19

IV.  DOJ HAS NOT MET ITS BURDEN TO SEGREGATE RESPONSIVE,
     NON-EXEMPT INFORMATION................................................................................ 23

CONCLUSION................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*9 to 5 Org. for Women Office Workers v. Bd. of Governors of Fed. Reserve Sys.*,
  721 F.2d 1 (1st Cir. 1983) ................................................................................. 8-9

*American Civil Liberties Union v. DOJ*,
  655 F.3d 1 (D.C. Cir. 2011) ................................................................................ 21

*Animal Legal Def. Fund, Inc. v. Dep't of Air Force*,
  44 F. Supp. 2d 295 (D.D.C. 1999) ..................................................................... 23

*Bennett v. DEA*,
  55 F. Supp. 2d 36 (D.D.C. 1999) ......................................................................... 4

*Biles v. HHS*,
  931 F. Supp. 2d 211 (D.D.C. 2013) ................................................................... 14

*Bristol-Myers Co. v. FTC*,
  424 F.2d 935 (D.C. Cir. 1970) ..................................................................... 18, 19

*Campbell v. DOJ*,
  164 F.3d 20 (D.D.C. 1998) ................................................................................ 22

*Center for Digital Democracy v. FTC*,
  2016 WL 3093369 (D.D.C. June 1, 2016) ...................................................... 9, 10

*Citizens for Responsibility & Ethics in Washington v. DOJ*,
  746 F.3d 1082 (D.C. Cir. 2014) ..................................................................... 20-21

*Coastal States Gas Corp. v. DOE*,
  617 F.2d 854 (D.C. Cir. 1980) ....................................................................... 3, 17

*Competitive Enter. Inst. v. Office of Sci. & Tech. Pol.*,
  827 F.3d 145 (D.C. Cir. 2016) ............................................................................. 1

*COMPTEL v. FCC*,
  910 F. Supp. 2d 100 (D.D.C. 2012) ................................................................... 20

*Defenders of Wildlife v. U.S. Border Patrol*,
  623 F. Supp. 2d 83 (D.D.C. 2009) ....................................................................... 6

*Department of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ................................................................................... 4, 16, 17

*Dorsett v. Dep't of Treasury,*
   307 F. Supp. 2d 28 (D.D.C. 2004) ....................................................................24

*Ethyl Corp.v. EPA,*
   25 F.3d 1241 (4th Cir. 1994) .........................................................................17

*Government Accountability Project v. HHS,*
   691 F. Supp. 2d 170 (D.D.C. 2010) ................................................................13

*Judicial Watch, Inc. v. FDA,*
   449 F.3d 141 (D.C. Cir. 2006) ....................................................................5, 6

*Judicial Watch, Inc. v. USPS,*
   297 F. Supp. 2d 252 (D.D.C. 2004) ................................................................24

*Keys v. DOJ,*
   830 F.2d 337 (D.C. Cir. 1987) .........................................................................6

*Krikorian v. Dep't of State,*
   984 F.2d 461 (D.C. Cir. 1993) .......................................................................24

*Mead Data Cent., Inc. v. Dep't of Air Force,*
   566 F.2d 242 (D.C. Cir. 1977) .........................................................................5

*Morton-Norwich Prods., Inc. v. Mathews,*
   415 F. Supp. 78 (D.D.C. 1976) ......................................................................24

*Murray v. Amalgamated Transit Union,*
   2016 WL 1664775 (D.D.C. Apr. 26, 2016) .......................................................4

*National Archives & Records Admin. v. Favish,*
   541 U.S. 157 (2004) ...............................................................................20, 21

*National Ass'n of Home Builders v. Norton,*
   309 F.3d 26 (D.C. Cir. 2002) ..............................................................20, 21, 22

*National Inst. of Military Justice v. DOD,*
   512 F.3d 677 (D.C. Cir. 2008) .................................................................15, 16

*National Parks & Conserv. Ass'n v. Kleppe,*
   547 F.2d 673 (D.C. Cir. 1976) .....................................................................3, 5

*National Parks & Conserv. Ass'n v. Morton,*
   498 F.2d 765 (D.C. Cir. 1974) .....................................................................9, 11

*Neuman v. United States,*
   70 F. Supp. 3d 416 (D.D.C. 2014) ...................................................................6

*Prison Legal News v. Samuels*,
    787 F.3d 1142 (D.C. Cir. 2015).................................................................. 22-23

*Public Citizen v. HHS*,
    975 F. Supp. 2d 81 (D.D.C. 2013) ....................................................................7, 8

*Rodriguez v. Dep't of Army*,
    31 F. Supp. 3d 218 (D.D.C. 2014) ......................................................................22

*Smith v. Dep't of Labor*,
    798 F. Supp. 2d 274 (D.D.C. 2011) .................................................................6, 24

*Southern Utah Wilderness All., Inc. v. Hodel*,
    680 F. Supp. 37 (D.D.C. 1988) ............................................................................3

*Stern v. FBI*,
    737 F.2d 84 (D.C. Cir. 1984) .........................................................................21, 22

*United Am. Fin., Inc. v. Potter*,
    667 F. Supp. 2d 49 (D.D.C. 2009) ......................................................................20

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
    489 U.S. 749 (1989)...............................................................................1, 22, 23

*United States v. Erie Cty., N.Y.*,
    763 F.3d 235 (2d Cir. 2014)................................................................................3

*United States v. HSBC Bank USA, N.A.*,
    2016 WL 347670 (E.D.N.Y. Jan. 28), *motion to certify appeal
    denied*, 2016 WL 2593925 (E.D.N.Y. May 4, 2016).................................. 2-3, 8, 23

*United States v. Siemens Aktiengesellschaft*,
    Cr. No. 08-367-RJL (Dec. 15, 2008) ..........................................................7, 10, 15

*Wilderness Soc'y v. Dep't of Interior*,
    344 F. Supp. 2d 1 (D.D.C. 2004) ....................................................................... 24

**Federal Statutes**

Children's Online Privacy Protection Act ....................................................................9

Foreign Corrupt Practices Act (FCPA)........................................................... *passim*

Freedom of Information Act (FOIA) ............................................................... *passim*

**Rules**

Fed. R. Civ. P. 56.................................................................................................1

Local Rules 7(d) and 56.1 ............................................................................................1

**Other Authorities**

11th Advanced Conference on International Compliance & Legal Risks 2016
http://www.pohlmann-company.com/images/pdf/news_events/veran-
staltungen/617L16_E.pdf.............................................................................12

20th Annual Conference and General Meeting of International Association of
Prosecutors, 2015, http://www.iap-
association.org/getattachment/Conferences/Annual-Conferences/Annual-
Conference-2015/Provisional ......................................................................12

Anti-Corruption: Effective Anti-Corruption Compliance Strategies to Prepare for
Increased Regulatory Scrutiny and Global Enforcement 24 – 25 January 2012,
https://www.cov.com/files/Uploads/Documents/5th%20Annual%20European
%20Forum%20on%20Anti-Corruption.pdf...................................................12

Arthur Conan Doyle, *The Silver Blaze*, THE MEMOIRS OF SHERLOCK HOLMES
(1892)..........................................................................................................9

Basel Institute on Governance, Conference Speaker Bios
https://www.baselgovernance.org/confer ....................................................12

Business Compliance: Governance – Compliance – Ethics, http://www.ethic-
intelligence.com/wp-content/uploads/2014-Business-Compliance-
Article_executive-summaries.pdf ...............................................................12

Corporate Strategies for Internal and Regulatory Investigations, 2008
http://www.gleisslutz.com/uploads/tx_gldataobjects/Gleiss_5__02 ........12

Dick Carozza, "*Didn't comply? Then fully cooperate*" Fraud Magazine, May/June
2015 (http://www.fraud-magazine.com/article.aspx?id=4294988068) ..................13

Editorial, *Too Big to Indict*, N.Y. Times, Dec. 11, 2012
(http://www.nytimes.com/2012/12/12/opinion/hsbc-too-big-to-
indict.html?_r=1). ........................................................................................2

European Business Ethics Forum: Sharing Ideas and Successful Practices in
Business Ethics 2009 http://www.ebef.eu/wp-
content/uploads/2013/10/Summary-Report-2009.pdf ...............................12

Facilitation Payments Conference 2015, Speakers, http://yas-froemel-
tk7v.squarespace.com/our-crew-five/...........................................................12

Jens Burgard Rechtsanwalt, The Siemens Compliance System "Prevent - Detect - Respond and Continuous Improvement" https://iicj.net/store/index.php/papers/the-siemens-compliance-system-prevent-detect-respond-and-continuous-improvement-903.html ...........................................13

OECD Integrity Forum, http://www.fasken.com/files/Event/3ba4ea15-717f-4e05-847c-4a8f4011945a/Presentation/EventAttachment/83a0c1a9-3ad7-452b-8d18-4d30c1982678/2016-Integrity-Forum_Agenda.pdf ........................................................12

Peter J. Henning, *HSBC Case Tests Transparency of Deferred Prosecution Agreements*, N.Y. Times, Feb. 8, 2016 (*available at* http://www.nytimes.com/2016/02/09/business/dealbook/hsbc-case-tests-transparency-of-deferred-prosecution-agreements.html?_r=0) .................................................2

Press Release: Siemens Compliance Counsel Will Discuss International Internal Investigations at ABA Conference in Frankfurt, Nov. 29, 2012, http://www.americanbar.org/news/abanews/aba-news-archives/2013/08/siemens_compliancec.html .........................................................................12

Press Release, Department of Justice, *Siemens AG and Three Subsidiaries Plead Guilty to Foreign Corrupt Practices Act Violations and Agree to Pay $450 Million in Combined Criminal Fines:  Coordinated Enforcement Actions by DOJ, SEC and German Authorities Result in Penalties of $1.6 Billion*www.justice.gov/archive/opa/pr/2008/December/08-crm-1105.html. ......................1, 2

The UK Anti-Corruption Summit 2009, Speakers http://events.ethicalcorp.com/ukethics/....................................................................12

World Legal Forum: Managing Corporate Conflicts, 2011 http://www.hiil.org/data/sitemanagement/media/WLF_2011.pdf ..........................................12

Pursuant to Fed. R. Civ. P. 56 and Local Rules 7(d) and 56.1, Plaintiff 100Reporters LLC ("100Reporters"), by counsel, hereby replies to the respective consolidated Oppositions and Replies of the Department of Justice ("DOJ"), Siemens Aktiengesellschaft ("Siemens") and compliance monitor Theodore Waigel (the "Monitor") (Doc. Nos. 70, 71, 72, 73, 74, and 75), filed in response to 100Reporters' Cross-Motion for Summary Judgment (Doc. Nos. 62 and 63).

## INTRODUCTION

At the heart of this case is a plea agreement that allowed Siemens to avoid prosecution for the largest Foreign Corrupt Practices Act ("FCPA") enforcement action in U.S. history. The terms of that settlement are available to the public, and indeed, have been trumpeted by DOJ as an unparalleled victory.[1]  But Siemens' compliance with those terms, and the government's enforcement of them, are still shrouded in secrecy.

The public has a right to know whether DOJ has done its job (and is continuing to do so) in enforcing the FCPA, a purpose that strikes at the core of the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), the function of which, the Supreme Court has made clear, is "serving the citizens' right to be informed about what their government is up to." *Competitive Enter. Inst. v. Office of Sci. & Tech. Pol.*, 827 F.3d 145, 150 (D.C. Cir. 2016) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  This being so, the burden on the government and Intervenors to prevent disclosure of information that will shed light on this question is high—much higher than Defendants would have this Court believe.

---

[1]  Press Release, Department of Justice, *Siemens AG and Three Subsidiaries Plead Guilty to Foreign Corrupt Practices Act Violations and Agree to Pay $450 Million in Combined Criminal Fines:  Coordinated Enforcement Actions by DOJ, SEC and German Authorities Result in Penalties of $1.6 Billion*, www.justice.gov/archive/opa/pr/2008/December/08-crm-1105.html. ("DOJ Press Release").

The crux of Defendants' argument is that if the materials that 100Reporters has sought were made public, Siemens, or another company in its position, would withhold similar information in the future for fear of disclosure.  Such a company would instead, the argument goes, choose to face prosecution on the underlying criminal offenses.  This argument, as 100Reporters has shown, is not credible, and as such cannot outweigh the public's interest in understanding its government's role in enforcing the law in a matter of such gravity.  The stakes in ensuring adequate enforcement of the FCPA, as DOJ observed in its press release announcing the settlement with Siemens, are no less than the government's intent "to level the business playing field, making it free from corruption and fair to those who seek to participate in it."  DOJ Press Release, *supra* note 1.

In this case in particular, the public's interest in reports by the Monitor that evaluate Siemens' compliance with remediation efforts is strong, given the magnitude of the FCPA case against Siemens and the question of the efficacy of its settlement which, like other forms of alternatives to punishing corporate crimes, is very much a matter of public debate.[2]  As explained in a recent decision from the Eastern District of New York that involved judicial records, including reports by a compliance monitor who was central to another deferred prosecution agreement, it is "appropriate and desirable for the public to be interested and informed [] in the progress of the [monitorship] arrangement … that the government chose to make the centerpiece of a federal criminal case."  *United States v. HSBC Bank USA, N.A.*, 2016 WL 347670, at *5 (E.D.N.Y. Jan. 28), *motion to certify appeal denied*, 2016 WL 2593925 (E.D.N.Y. May 4, 2016).

---

[2] *See* Peter J. Henning, *HSBC Case Tests Transparency of Deferred Prosecution Agreements*, N.Y. Times, Feb. 8, 2016 (http://www.nytimes.com/2016/02/09/business/dealbook/hsbc-case-tests-transparency-of-deferred-prosecution-agreements.html?_r=0); Editorial, *Too Big to Indict*, N.Y. Times, Dec. 11, 2012 (http://www.nytimes.com/2012/12/12/opinion/hsbc-too-big-to-indict.html?_r=1).

Access to such compliance reports "enables the public to understand, monitor, and respond to the progress made towards altering what the Department of Justice, as enforcer of the nation's laws, alleged" was unlawful conduct, which it sought to resolve through means other than full prosecution. *United States v. Erie Cty., N.Y.*, 763 F.3d 235, 242 (2d Cir. 2014).

Despite this, DOJ attempts here to evade scrutiny by arguing that its vague descriptions of the materials it withheld relating to Siemens' FCPA monitorship are sufficient to justify its burden under FOIA, notwithstanding the duty the statute imposes of specific description of withholdings on all agencies.  Mindful that "providing information material for monitoring the Government's activities is a core purpose of FOIA,"[3] the Court should grant 100Reporters summary judgment because Defendants continue to offer only "conclusory and generalized" explanations that are "unacceptable as a means of sustaining" non-disclosure. *National Parks & Conserv. Ass'n v. Kleppe*, 547 F.2d 673, 680 (D.C. Cir. 1976) ("*Nat'l Parks II*").  Defendants have not, at any stage, made the required showing, but simply repeat rote, unsubstantiated claims that the material 100Reporters seeks is exempt from disclosure under FOIA Exemptions 4, 5, 6 and 7(C).

Specifically, in addition to failing to show that disclosure would cause substantial competitive injury to Siemens of sufficient gravity to justify withholding, DOJ's descriptions of the records are thoroughly vague and boilerplate.  This cannot satisfy the burden of drawing the connections necessary to invoke FOIA's "limited exceptions," which are designed to ensure "the basic policy that disclosure, not secrecy, [remains] the dominant objective." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  As there continues to be

---

[3]   *Southern Utah Wilderness All., Inc. v. Hodel*, 680 F. Supp. 37 (D.D.C. 1988) (citation and internal quotation marks omitted).  *Cf. Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 861 (D.C. Cir. 1980) (FOIA encourages agencies to disclose even "exempt material for which there is no compelling reason for withholding").

no genuine issues of material fact bearing on 100Reporters' Complaint seeking access to the records,[4] and it is entitled to judgment as a matter of law, the Court should grant 100Reporters' Cross-Motion for Summary Judgment for reasons stated in its Memorandum in Support thereof ("Pl. Mem.") and in this Reply.  *Bennett v. DEA*, 55 F. Supp. 2d 36, 38-39 (D.D.C. 1999).

## ARGUMENT

## I.    DEFENDANTS HAVE NOT SHOWN THAT WITHHOLDING IS JUSTIFIED UNDER EXEMPTION 4

### A.    DOJ Has Provided Insufficient Detail to Exempt Documents from Disclosure Under Exemption 4

The Court cannot credit DOJ's contentions that non-disclosure is justified under Exemption 4 because its explanations of the withheld records are not sufficiently detailed to exempt them as confidential commercial materials.   DOJ Opp. 13.   Fundamental to the insufficiency of DOJ's response is the repetitive and rote nature of its justifications for non-disclosure.   While DOJ's Opposition reminds the Court that the *Vaughn* index in this case is lengthy, it overlooks that length does not equal depth.

---

[4]   Defendants claim that Plaintiff's Response to Defendants' Statement of Material Facts as to Which There Are No Genuine Issues contains an insufficient denial of the legal arguments and conclusory statements that Defendants have attempted to pass off as facts. Defs.' Joint Reply to Pls.' Resp. to Defs.' Joint Statement of Material Facts (ECF No. 64) at 1 (citing *Murray v. Amalgamated Transit Union*, 2016 WL 1664775, at *9 (D.D.C. Apr. 26, 2016)).  This claim does not withstand scrutiny.  Plaintiff specifically listed the facts it denied, quoting each fact and citing the relevant paragraph number from Defendants' submission.  Moreover, *Murray*, the very case on which Defendants rely, contradicts their position.  In that case, even where "Plaintiffs did not expressly state they "admitted' or 'denied' any given fact," this Court found that "such clarity, while preferable, [is] unnecessary [where] Plaintiffs' statement made reasonably clear which facts they contested and which ones they did not."  *Murray*, 2016 WL 1664775, at *9.  The Court went on to note that, "[w]here Plaintiffs have submitted a statement of facts with record citations, … the purposes underlying the Rule have been satisfied, and … [t]o hold otherwise would yield the draconian sanction of an adverse judgment, which is not warranted in [such] circumstances." *Id.*  There is no question Plaintiff's Response was abundantly clear as to which facts it contests and which it does not.

Any fair review reveals that the *Vaughn* index does not describe the actual documents in sufficient detail to justify withholding.[5]   DOJ claims that the *Vaughn* index "specifically tied each of the Monitor's Reports and other documents to Exemption 4," and gives an example of why this is supposedly so.  DOJ Opp. 16.  However, taking the example DOJ offers, its burden is not satisfied.  If anything, the example illustrates that DOJ simply invokes a FOIA exemption and parroted its standard, through such bare statements as "Siemens has a commercial interest in the information," that "[r]elease of the document would likely cause Siemens substantial competitive harm by allowing its competitors to use its proprietary information to its commercial disadvantage," or that disclosure could provide a "free roadmap as to what works in international commerce without violating the FCPA."  DOJ Opp. 15.  Such one-size-fits-all "explanations" do not provide 100Reporters or the Court sufficient information to "correlat[e] those claims with the particular part of a withheld document to which they apply."  *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006).  As such, they deny the Court (and 100Reporters) the ability to understand why or how disclosure of particular information, either alone or together with other information, would likely cause substantial competitive injury.

In an attempt to paper over this deficiency, DOJ claims the Moberly Declaration provides "adequate description of the records."  DOJ Opp. 13.  But that Declaration contains hardly any more specificity than the *Vaughn* index, and repeats the same conclusory statements mirroring the statutory standard.  *Compare, e.g., Neuman v. United States*, 70 F. Supp. 3d 416, 424 (D.D.C. 2014) (where "*Vaughn* index presents a sort of wholesale description of the documents and

---

[5]   *See*, *e.g.*, *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) ("the burden which the FOIA specifically places on the Government … cannot be satisfied by the sweeping and conclusory citation of an exemption").  S*ee also Nat'l Parks II*, 547 F.2d at 680 (agency must provide more than "conclusory and generalized allegations of exemptions") (citation and internal quotation marks omitted).

redactions with respect to the entire production, without connecting each exemption to each redaction … it thereby fails to provide any means for identifying or distinguishing between any of the redactions contained in the responsive documents."). *See Smith v. Dep't of Labor*, 798 F. Supp. 2d 274, 281 (D.D.C. 2011) (holding *Vaughn* index was adequate where it "describes the rationale for the exemptions invoked and provides the locations in the disclosed documents where redactions are made under those exemptions"); *see also Keys v. DOJ*, 830 F.2d 337, 350 (D.C. Cir. 1987) (upholding *Vaughn* index with detailed index and "affidavit [that] placed each document into its historical and investigative context."). As such, DOJ has not linked its rationale to specific locations in the materials or provided sufficient context to justify withholding.

The recitations in the Declaration accordingly do no more to correlate DOJ's claims with a particular part of a withheld document than any other document DOJ has offered. While it is true that "abstraction can aid court review when drawing from specific examples," *Judicial Watch v. FDA*, 449 F.3d at 147 (quoted at DOJ Opp. 14), DOJ has provided no specific example or any detail whatsoever as to the contents of the documents at issue. This is utterly inconsistent with the command that an agency "disclose as much information as possible without thwarting the exemption's purpose." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009) (citation and internal quotation marks omitted). Without that, the Court cannot determine the propriety of the withholding, which means DOJ fails to justify non-disclosure. *Neuman*, 70 F. Supp. 3d at 424 ("it is well established that the agency's listing must [] 'enable the court and the opposing party to understand the withheld information in order to address the merits of the claimed exemptions.'").

**B.    DOJ Has Failed to Show that Disclosure Would Impair Its Ability to Obtain Reliable Information or Effectively Enforce the Laws**

DOJ fares no better in arguing that disclosure of the materials would impair its ability to obtain reliable information in the future.  DOJ Opp. 16-22 (citing DOJ MSJ 26).  As showed in 100Reporters' Cross-Motion, DOJ has presented no evidence that disclosure of the Siemens materials would deter a similarly situated company from cooperating fully in a future FCPA enforcement action.  Nor can it.  Despite DOJ's claim, *Public Citizen v. HHS*, 975 F. Supp. 2d 81 (D.D.C. 2013) ("*Public Citizen I*"), does not require that a company face a "corporate death sentence" in order for a court to be convinced that it will provide high-quality information.  DOJ Opp. 18.  Rather, DOJ must show that disclosure would drive a future company to refuse cooperation in a manner that would cause more than a "minor impairment" to DOJ's ability "to carry out its statutory purpose," given the countervailing "disclosure mandate of FOIA."  *Public Citizen I*, 975 F. Supp. 2d at 112-13.

There is no question as to the sufficient incentives of Siemens, or any future company in its shoes, to cooperate with DOJ—whether it were to face a literal "corporate death sentence" or not.  Had Siemens not cooperated fully with DOJ, it would have faced breaching its plea agreement with the agency, the consequences of which included (i) an increase in sentence; (ii) being prosecuted for perjury and obstruction of justice; and (iii) allowing DOJ to use against Siemens in criminal and civil proceedings any and all of the information it provided to DOJ, as well as anything admitted Statement of Offense.  *See United States v. Siemens Aktiengesellschaft*, Cr. No. 08-367-RJL (Dec. 15, 2008), ECF No. 3 ("Sentencing Memorandum").  These consequences track the "extensive monetary and injunctive penalties for violations of the agreement" in *Public Citizen I*.  975 F. Supp. 2d at 112.

And here, as in *Public Citizen I*, none of the defendants argues the threat of disclosure of these materials would have led Siemens to choose further criminal prosecution instead of settlement and a compliance plan. *Id.* ("merely because it was important to Purdue 'that the materials [it] would submit to OIG' be shielded from disclosure is not the same as saying [it] would not have [proceeded] without such assurances"). The inescapable conclusion is that, bearing in mind the consequences of non-cooperation, Siemens would have cooperated, and would have provided DOJ with the same materials, whether or not it believed they might be disclosed through FOIA. The same would be true of any other company in the future facing the same prospects Siemens faced here. *See United States v. HSBC Bank USA, N.A.*, 2016 WL 347670, at \*6 (finding that "the government's interest in prohibiting public access to the [monitoring] Report for the sake of its future law enforcement efforts is minimal" because the decision to enter into a monitorship arrangement "presumably benefitted the parties").

DOJ also argues there is a separate basis, a "third prong," for concluding that disclosure would harm its ability to perform its statutory mandate, and that 100Reporters purportedly failed to address it in its Opposition and thus conceded the point, but both those claims fail. DOJ characterizes this "third prong" as the threat that "disclosure of the materials sought by Plaintiff would impair a crucial government interest in effective law enforcement of certain criminal statutes." DOJ Opp. 16-17. But the single case DOJ cites to support this claim makes no reference to a "third prong," and states only that the "Government should not be precluded from invoking the protection of exemption 4 merely because the asserted interest is not precisely one of those two identified in *National Parks I.*" *9 to 5 Org. for Women Office Workers v. Bd. of Governors of Fed. Reserve Sys.*, 721 F.2d 1, 10 (1st Cir. 1983). This is accordingly a case of the

dog that did not bark,[6] as nowhere in *9 to 5* did the Third Circuit mention enforcement of criminal laws as grounds for Exemption 4 withholding, nor does DOJ cite any authority from this jurisdiction in the ensuing 33 years in support of this point.  In fact, *no case* that DOJ has cited suggests an alleged impairment of the government's ability to enforce "certain criminal statutes" constitutes an independent basis, beyond the two prongs of *National Parks I*, for withholding records under Exemption 4 that are otherwise disclosable under FOIA.[7]

Nor does the recent decision in *Center for Digital Democracy v. FTC*, 2016 WL 3093369 (D.D.C. June 1, 2016), alter this conclusion, as that the case is easily distinguished.  *See* DOJ Opp. 20-21.  In *Center for Digital Democracy*, the court upheld withholding of materials submitted to the FTC where submitters, safe harbor programs under the Children's Online Privacy Protection Act, had wide discretion as to how much material to submit to the agency.  As the court explained, "the text of the annual filing rule leaves plenty of room for interpretation." *Center for Digital Democracy*, 2016 WL 3093369, at *11.  It noted that some of the filers "such as kidSAFE—submitted multi-page, detailed reports containing the requested information … [while o]thers—such as CARU—submitted only short letters containing terse entries corresponding to the requested information."  *Id.*  The court observed that if detailed analyses "were publicly disclosed, it is easy to envision that no safe harbor program would supply such information in future filings, thereby depriving the FTC of important and useful information."  *Id.*

---

[6]  *Cf.* Arthur Conan Doyle, *The Silver Blaze*, THE MEMOIRS OF SHERLOCK HOLMES (1892).

[7]  In reality, DOJ's "third prong" argument is simply a recitation of repercussions that it alleges would flow from future companies' reluctance to provide high-quality information.  *See* DOJ MSJ at 32 (enforcement could be compromised because disclosure "could lead future monitors to obtain incomplete information from companies").  As such, it adds no weight to the argument and fails to render DOJ's theory—that a company like Siemens would choose continued prosecution over public disclosure of compliance records—any more plausible.

The situation here is distinctly different.  Far from having wide discretion as to what kind of information to submit to the Monitor (and how much it could get away with withholding), Siemens understood that its full cooperation was required to satisfy its plea agreement and avoid continued prosecution.  As Defendants point out, the Monitor was selected for his knowledge, sophistication, and probity, and it defies logic to conclude that Siemens, like the safe harbor programs in *Center for Digital Democracy*, could have simply submitted "short letters containing terse entries" and win approval of the Monitor and DOJ.  *Id.*  In distinct contrast, Siemens, by the terms of the Monitorship agreement, had to "provide the Monitor with access to all information, documents, records, facilities and/or employees, as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor under this Agreement." *Siemens*, Cr. No. 08-367-RJL, ECF No. 15, Att. 2 ("Monitorship Agreement") at 4-5.

Moreover, in contrast to the situation here, where the materials will directly aid the public in evaluating where DOJ is doing its job, the court in *Center for Digital Democracy* justified non-disclosure on the fact that the documents at issue were not related to the FTC's activities. As the court explained, "the public interest in the information Plaintiff seeks is less weighty here because it will not achieve the central purpose of FOIA, which is to inform citizens about 'what the government is up to' .... It would tell the public little, if anything, about how the FTC itself operates."  *Center for Digital Democracy*, 2016 WL 3093369, at *11.

Ultimately, DOJ's arguments about the impairment of governmental interest boil down to one contention: that disclosure could lead to companies turning over information of lesser quality in the future.  Despite DOJ's claim that 100Reporters has ignored its novel "third prong" argument, which is supported by neither law nor logic, 100Reporters has fully addressed this tangent, which fails for the same reasons as DOJ's larger argument: that companies, faced with

10

the choice of turning over materials potentially disclosable through a FOIA request or bearing the brunt of the government's considerable punishment for non-cooperation, would choose the latter. This claim is simply not credible, and as such cannot satisfy DOJ's burden of justifying non-disclosure under Exemption 4.

### C.      Defendants' Claims of Competitive Harm Are Insufficient to Justify Non-Disclosure

Defendants' claims of competitive harm are similarly insufficient to justify continued withholding. Despite multiple attempts, neither DOJ nor Siemens has shown, as required by Exemption 4, that disclosure of the materials sought by 100Reporters would "cause substantial harm to the competitive position" of Siemens in the marketplace. *National Parks & Conserv. Ass'n v. Morton,* 498 F.2d 765, 770 (D.C. Cir. 1974) ("*Nat'l Parks I*"). There is simply no evidence, beyond Defendants' conclusory statements, that disclosure of materials related to Siemens' compliance program would constitute offering its competitors "a free road map" that could be easily implemented by companies that lacked Siemens' unique internal organization and which operate in completely different geographic regions.

In its Opposition, Siemens offers a creative analogy to support its claims of harm. But this is not a "Coke vs. Pepsi" scenario concerning a decades-old proprietary recipe at the heart of a company's entire product line. Siemens' compliance program, however tailored to the company and effective it may be, is simply a way to help it follow the law—that is, the program's only purpose is to assist Siemens to *not* do something illegal. Whatever competitive advantage accrues to Siemens on this account is secondary to the program's actual, sole purpose: to ensure Siemens no longer breaks the law. This goal, and the government's role in ensuring Siemens—and indeed all companies—meets it, are of primary public importance and lie within the heart of FOIA's aims.

Further undermining Siemens' attempts to characterize its belated compliance with FCPA as a secret formula of competitive significance are the company's own frequent public statements about the program. Siemens' representatives have presented details of this program in public settings on at least eleven occasions[8] since its settlement and have produced at least two detailed public descriptions of the program.[9] Siemens cannot have it both ways: it cannot seek plaudits for its commitment to compliance with the law while hiding the proof of that compliance behind claims of potential competitive harm.

---

[8] Facilitation Payments Conference 2015, Speakers, http://yas-froemel-tk7v.squarespace.com/our-crew-five/; The UK Anti-Corruption Summit 2009, Speakers http://events.ethicalcorp.com/ukethics/; 11th Advanced Conference on International Compliance & Legal Risks 2016 http://www.pohlmann-company.com/images/pdf/news_events/veran-staltungen/617L16_E.pdf; Basel Institute on Governance, Conference Speaker Bios https://www.baselgovernance.org/conference/bios; 20th Annual Conference and General Meeting of International Association of Prosecutors, 2015, http://www.iap-association.org/getattachment/Conferences/Annual-Conferences/Annual-Conference-2015/Provisional_programme_2_September_2015.pdf.aspx; Press Release: Siemens Compliance Counsel Will Discuss International Internal Investigations at ABA Conference in Frankfurt, Nov. 29, 2012, http://www.americanbar.org/news/abanews/aba-news-archives/2013/08/siemens_compliancec.html; Anti-Corruption: Effective Anti-Corruption Compliance Strategies to Prepare for Increased Regulatory Scrutiny and Global Enforcement 24 – 25 January 2012, https://www.cov.com/files/Uploads/Documents/5th%20Annual%20European%20Forum%20on%20Anti-Corruption.pdf; European Business Ethics Forum: Sharing Ideas and Successful Practices in Business Ethics 2009 http://www.ebef.eu/wp-content/uploads/2013/10/Summary-Report-2009.pdf; Corporate Strategies for Internal and Regulatory Investigations, 2008 http://www.gleisslutz.com/uploads/tx_gldataobjects/Gleiss_5__02; World Legal Forum: Managing Corporate Conflicts, 2011 http://www.hiil.org/data/sitemanagement/media/WLF_2011.pdf; 2016 OECD Integrity Forum, http://www.fasken.com/files/Event/3ba4ea15-717f-4e05-847c-4a8f4011945a/Presentation/EventAttachment/83a0c1a9-3ad7-452b-8d18-4d30c1982678/2016-Integrity-Forum_Agenda.pdf.

[9] Business Compliance: Governance – Compliance – Ethics, http://www.ethic-intelli-gence.com/wp-content/uploads/2014-Business-Compliance-Article_executive-summaries.pdf; Jens Burgard Rechtsanwalt, The Siemens Compliance System "Prevent - Detect - Respond and Continuous Improvement" https://iicj.net/store/index.php/papers/the-siemens-compliance-system-prevent-detect-respond-and-continuous-improvement-903.html.

DOJ's arguments are likewise undercut by its own statements.  In its Opposition, DOJ rejects 100Reporters' position that successful FCPA compliance programs are tailor-made and not readily adopted by competitors.   Instead, it reiterates its claim that "[d]isclosure of confidential information about Siemens' compliance programs would provide a free roadmap" for competitors to create their own FCPA compliance programs.  Moberly Decl. at 8. Yet outside of this case, DOJ's position is completely the opposite.  As U.S. assistant attorney general for the DOJ's Criminal Division Leslie R. Caldwell has stated:

> I think companies have to tailor their compliance programs and their investigative mechanisms to their businesses. *There's no one-size-fits-all compliance program. Different businesses have different risks.* And a company needs to do an assessment that's very tailored to their risks and game out what could go wrong and figure out how to prevent that from happening.[10]

This statement reinforces what 100Reporters has already demonstrated:  that Siemens' unique business profile and geographic reach, and its uniquely broad violation of the FCPA, necessarily mean its compliance program is unique to the company, and not replicable or easily or fruitfully usable by competitors.  As this Court has explained, "[i]n order to show competitive harm, [an agency] must demonstrate both 'actual competition and a likelihood of substantial competitive injury.'"  *Government Accountability Project v. HHS*, 691 F. Supp. 2d 170, 175 (D.D.C. 2010).  Neither DOJ nor Siemens has done so here.

Even if Defendants' claims of serious competitive harm were plausible, neither DOJ nor Siemens has provided the showing required to preclude disclosure of the materials sought.  Siemens claims that the materials "describe strategies and tactics that Siemens employed on competitively bid projects, identify preferred business partners and agents, and other operational information."  Siemens MSJ at 20-21.  It has not, however (nor has DOJ), provided a concrete

---

[10]   Dick Carozza, "*Didn't comply? Then fully cooperate*" Fraud Magazine, May/June 2015 (*available at* http://www.fraud-magazine.com/article.aspx?id=4294988068)(emphasis added).

explanation as to the type and degree of harm that would be suffered, or specific examples of the "strategy and tactics" that would be exposed were these materials to be publicly released. *Biles v. HHS*, 931 F. Supp. 2d 211, 230 (D.D.C. 2013) (agency is required to disclose where it "does not even give examples of the extent of the harm or the type of harm that would occur if the requested data were released."). Where none of the Defendants have made a plausible showing that disclosure of the materials would cause a likelihood of substantial competitive harm, continued withholding cannot be justified.

## II. DEFENDANTS HAVE NOT SHOWN THAT WITHHOLDING IS JUSTIFIED UNDER EXEMPTION 5

### A. The Defendants Have Not Shown that the Monitor's Work Falls Within the Consultant Corollary

While Defendants rely heavily on the Monitor's work falling under the "consultant corollary" to Exemption 5 to allow withholding, there is no support, as 100Reporters showed in its Cross-Motion, for stretching this doctrine to encompass an independent monitor whose contractual duties were to Siemens, not the government, and who—as even DOJ admits— functioned in a role that was only "akin" to a consultant. Indeed, given a further opportunity to justify withholding the Monitor's work under the consultant corollary, DOJ and the Monitor in their respective oppositions remain unable to say anything more than this, despite dedicating pages and pages to the issue. This is insufficient to place the documents within the scope of the doctrine. Furthermore, as the Sentencing Memorandum in the underlying case clearly states, the role in question was that of "an independent monitor." *Siemens*, Cr. No. 08-367-RJL, ECF No. 3 at 11. Therefore, by the very terms of the engagement, the Monitor cannot have been an agent of the government.

100Reporters demonstrated that there is no authority to support DOJ's and the Monitor's arguments, and the oppositions and replies offer nothing in response.[11]  To be sure, DOJ argues that "courts have repeatedly and routinely allowed agencies to protect advice generated by a wide range of outside experts"—but it cites only one case for this proposition, *National Inst. of Military Justice v. DOD*, 512 F.3d 677, 683 (D.C. Cir. 2008).  That case concerned comments from "a number of non-governmental lawyers, who were former high ranking governmental officials or academics or both."  *Id.*  But it did not address the situation here, where the Monitor's duties were specifically shaped to ensure that his assessments were "independent" and neutral.  Sentencing Memorandum at 11.

Even if the consultant corollary test is measured by how the Monitor actually behaved, rather than how his role was formally defined, as the Monitor argues, Defendants have failed to demonstrate that the Monitor's role falls within the corollary.  Attachment 2 to DOJ's Statement of Offense in the underlying case lays out the duties of the Monitor and his relationship to the other defendants clearly.  *See* Monitorship Agreement.  That document frames Siemens' duty of cooperation and the Monitor's duties during the term of his mandate.  DOJ is referred to only as a third party to whom disputes may be referred and to whom reports should eventually be sent, but the agreement in no sense places the Monitor in the government's shoes as a consultant or any other type of contractor.  This reinforces the way that the monitorship was framed in the Sentencing Memorandum:  as an "independent" evaluator that was to stand apart from both Siemens and the government.  Siemens Sentencing Memorandum at 11.  As such, the Monitor's role does not fall within the bounds of the consultant corollary, which extends only "to

---

[11]   Any suggestion that Plaintiff has "conceded" any point on this issue, Monitor Opp. 2, is utterly misplaced.  *See* Pl. Mem. at 33.

communications between Government agencies and outside consultants hired by them." *National Inst. of Military Justice*, 512 F.3d at 682.

Indeed, far from deputizing the Monitor as a government watchdog, the Monitorship agreement required that should the Monitor discover "questionable or corrupt payments or questionable or corrupt transfers of property or interests," the Monitor must report such activity to Siemens' General Counsel or Audit Committee—*not* DOJ.  Only if the Monitor believes that such activities "may constitute a *significant* violation of the law, the Monitor should *also* report such improper activity to the Department." Monitorship Agreement at 8. (emphasis added).  The centrality of the relationship between Siemens and the Monitor is reinforced by the fact that it was Siemens that engaged and paid for the Monitor's work.

The fact the DOJ was eventually made privy to the results of the process undertaken by Siemens and the Monitor does not make the Monitor a government consultant for the purposes of the consultant corollary, which applies only when "the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it."  *Klamath*, 532 U.S. at 11.  The Monitor agreement delineates numerous specific obligations that the Monitor owed to Siemens.  That these were aligned with government interest does not nullify the fact that these duties precluded the Monitor from falling within the consultant corollary.  As the Supreme Court explained in *Klamath*, to fall within the consultant corollary, "consultants may be enough like the agency's own personnel to justify calling their communications 'intra-agency.'"  *Id*. at 12.  That description does not apply here, where the party such as the Monitor, whose duties were to Siemens, "necessarily communicate[s] … their own, albeit entirely legitimate, interests in mind."  *Id.* That being so, Defendants' arguments fail.

### B.    DOJ Has Not Provided Sufficient Detail to Sustain its Exemption 5 Deliberative Process Claims

16

In its Opposition, DOJ repeats its argument that because the Monitor's evaluation of Siemens' compliance with the terms of the settlement agreement played a role in the agency's decision to release Siemens from further monitoring, it may withhold the documents it produced under Exemption 5.  But, as 100Reporters noted in its Cross-Motion, "[i]t is not enough that a record was prepared as part of agency consideration of some matter – it also must 'bear on the formulation or exercise of policy-oriented judgment.'"  Pl. Mem. at 30 (quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994)).  DOJ contends that because it "evaluated" the Monitor's reports, these documents are therefore automatically exempted from the FOIA's overall mandate of disclosure.  DOJ Opp. 9.  But aside from explaining that, generally, "DOJ relied on the Monitor's reports and recommendations when it evaluated whether Siemens had satisfied its obligations under the plea agreement," DOJ has not identified with any specificity "what deliberative process is involved, and the role played by the documents in issue in the course of the process."  *Coastal States*, 617 F.2d at 868.

Despite DOJ's contention, its showing remains insufficient to meet its burden under the deliberative process privilege due to ongoing failure to link the records at issue to discernible policy-making activity.  Its attempt to include the Monitor as a part of the agency for purposes of internal agency discussion fails for the same reasons as its argument that the "independent" Monitor falls within the consultant corollary.  DOJ Opp. 10.  Defendants' efforts to withhold information from the public under the "consultant corollary" cannot prevail.

## III.   DEFENDANTS HAVE NOT SHOWN THAT WITHHOLDING IS JUSTIFIED UNDER EXEMPTIONS 6 AND 7(C)

### A.   The Materials Are Not Exempt as Records Compiled for a Law Enforcement Purpose

There is no merit to DOJ's contention that the materials withheld are exempt under Exemption 7(C) insofar as they were compiled "pursuant to a plea agreement in a criminal case,"

and are thus law enforcement records.  DOJ Opp. 26.  In its Cross-Motion, Plaintiff explained that because the information in question was generated in the course of evaluating Siemens' performance of its duties *after* the close of a criminal proceeding against it, and that evaluation process has itself been concluded for years, there was no merit to DOJ's contention that the records at issue were exempt from disclosure because they were compiled "for a law enforcement purpose."  Pl. Mem. at 46-48.  DOJ now argues that because Siemens was ordered to engage the Monitor to review its progress in creating an FCPA compliance system, the criminal case against the company "remained open during the duration of the monitorship."  But DOJ provides no support for its contention that this Court's judgment, entered January 6, 2009, somehow failed to terminate the case.

Rather, as the D.C. Circuit has held, non-disclosure under Exemption 7(C) is appropriate after an investigation has been terminated only when further "adjudicatory proceedings are imminent."  *Bristol-Myers Co. v. FTC,* 424 F.2d 935, 939 (D.C. Cir. 1970).  As the court explained, "the agency cannot, consistent with the broad disclosure mandate of the Act, protect all its files with the label 'investigatory' and a suggestion that enforcement proceedings may be launched at some unspecified future date."  *Id.*  Instead, "the District Court must determine whether the prospect of enforcement proceedings is concrete enough to bring into operation the exemption for investigatory files."  *Id.*  Here, the monitorship and DOJ supervision ended many years ago, and neither Siemens nor the Government has made any suggestion, let alone showed, that further enforcement proceedings are imminent or planned.

The mere existential possibility of some enforcement proceeding in the future is inadequate to justify withholding under Exemption 7(C).  DOJ's pleadings obscure the fact that the materials Plaintiff seeks were not created during the course of DOJ's investigation or aborted

prosecution.  Instead, they were compiled *after* the agency offloaded to the Monitor its duty to ensure compliance with the terms of the plea agreement that concluded that case.  As DOJ admitted in one of its declarations, it differentiates the monitor role from its law enforcement duties of investigation and prosecution.  Helou Decl. ¶ 15. (DOJ "could not conduct the kind of reviews that monitors conduct because our limited resources are focused on investigating and prosecuting violations of the FCPA, not acting as monitors.").  This being so, the materials created by the monitor after the end of case—and DOJ's role in its prosecution—cannot be withheld as law enforcement records.  Exemption 7(C) does not apply now, if ever it did.

### B.     The Categorical Non-Disclosure of the Names and Identifying Details of Government Personnel and Siemens Employees Is Not Justified Under Exemption 6 or 7(C)

Defendants have not shown that the DOJ's and Siemens' employees have substantial privacy interests in the information the Plaintiff seeks.  In its Opposition, DOJ insists once again that it has met its burden of establishing that a substantial privacy interest exists in the records detailing the names of government personnel and Siemens employees.  But despite this insistence, it has still failed to make any showing that the release of the names of government attorneys and Siemens personnel are the kinds of "intimate details" or "damaging information" that implicate significant privacy interests. *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002).  Redacting these names may be appropriate under a proper, specific showing of these privacy interests, but DOJ has not met that burden here. *See COMPTEL v. FCC*, 910 F. Supp. 2d 100, 124 (D.D.C. 2012) (courts will uphold redaction of personal identifying information under Exemption 6, but "the agency must at least provide the Court with some basis for such an interest"); *United Am. Fin., Inc. v. Potter*, 667 F. Supp. 2d 49, 60 (D.D.C. 2009) (To invoke Exemption 7(C), "agency must at least explain the ground for concluding that there is some factual basis for concerns about 'harassment, intimidation, or physical harm.'").

DOJ cites *National Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004), to support its contention that Plaintiff must allege some specific government wrongdoing to overcome a presumption of withholding under Exemption 7(C).  DOJ Opp. 28-30.  But this is backwards.  As the Court noted in *Favish*, FOIA has a "prodisclosure purpose," and a balancing exercise is required before that FOIA's presumption of openness can be overcome.  *Favish,* 541 U.S. at 159.   And courts have recognized that even insight into agency functions not involving malfeasance or negligence support a public interest showing under Exemptions 6 and 7(c), and tilt the balance toward disclosure.  DOJ invokes *Favish* to suggest that the public interest side of the balance may be advanced only through evidence of agency wrongdoing.  DOJ Opp. 28-30.  But courts have recognized that even insight into agency functions not involving malfeasance or negligence support a public interest showing under Exemptions 6 and 7(C), and tilt the balance toward disclosure.  In the context of Exemption 7(C), the D.C. Circuit has recognized that a "relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Citizens for Responsibility & Ethics in Washington v. DOJ,* 746 F.3d 1082, 1093 (D.C. Cir. 2014) (brackets in original).  "Indeed," the court went on, "we have repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy (whether or not that interest outweighs any privacy interest at stake in a given case)." *Id.* (collecting cases).  Moreover, the public interest extends to understanding simply how the government performs its role even where there is no allegation of misconduct or malfeasance.  *See American Civil Liberties Union v. DOJ*, 655 F.3d 1, 13 (D.C. Cir. 2011) (public interest in DOJ's legitimate use of and justification for warrantless cell phone tracking in order to inform public discourse and

legislation); *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984) (recognizing, in dicta, public interest "in knowing that a government investigation itself is comprehensive").

The facts here are also quite different than in *Favish*, where the Court held the asserted privacy interest in death-scene photographs easily outweighed the interest of the requester, who sought information challenging the conclusions of five government investigations into the suicide of Vincent Foster, Jr.  As the Court noted, "the balancing exercise in some other case might require us to make a somewhat more precise determination regarding the significance of the public interest and the historical importance of the events in question."  *Favish*, 541 U.S. at 175.

DOJ has not provided the Court with the detail necessary to undertake this "balancing exercise."  As Plaintiff noted in its Cross-Motion, "there is no indication the identifying information of government attorneys and Siemens personnel are automatically the kinds of 'intimate details' or 'damaging information' that implicate significant privacy interests."  Pl. Mem. at 43 (*citing National Ass'n of Home Builders*, 309 F.3d at 32).  Likewise, DOJ has still failed to sufficiently explain how disclosure would harm the individuals' privacy interest beyond such blanket statements as "[d]isclosure could subject him/her to harassment both in the conduct of their official duties and private life."  *Id.* (*citing Vaughn* index entries invoking Exemptions 6 and 7(C) including DOJ_005311 to DOJ_005312).  Without such explanation, the Court cannot support non-disclosure under Exemption 7(C).

Given the "presumption of openness inherent in FOIA," *Campbell v. DOJ*, 164 F.3d 20, 33 (D.D.C. 1998), Exemption 6 allows withholding records only if disclosure will cause a "*clearly* unwarranted invasion of personal privacy."  *Stern v. FBI*, 737 F.2d at 91 (emphasis in original) (citation and internal quotation marks omitted); 5 U.S.C. § 552(b)(6).  It is agency's

burden to show this:  "the agency must establish that disclosure of the information "would compromise a substantial, as opposed to *de minimums*, privacy interest."  *Rodriguez v. Dep't of Army*, 31 F. Supp. 3d 218, 235 (D.D.C. 2014).  Here, DOJ has offered only non-specific blanket statements such as "[d]isclosure could subject him/her to harassment both in the conduct of their official duties and private life."  *Vaughn* index entries invoking Exemptions 6 and 7(C) including DOJ_005311 to DOJ_005312.  Such a claim is speculative at best, and insufficient to justify non-disclosure under Exemption 6.

In its Opposition, DOJ argues—for the first time—that the number of 100Reporters' readers somehow skews the balance against disclosure, but this flies in the face of settled FOIA law.  This argument boils down to a contention that the potential of widespread dissemination weighs against disclosure.  But given the power of the Internet to disperse information disclosed under FOIA, acceptance of this argument would threaten to eviscerate FOIA.  Further, "the identity of the requesting party has no bearing on the merits of his or her FOIA request," *Reporters Comm. for Freedom of Press*, 489 U.S. at 771; *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015), so 100Reporters' ability to disseminate information is not a permissible factor for Exemption 6 balancing.

Under FOIA, the public—all of the public—is presumed to have a right of access to these materials in order to gain insight into "what their government is up to."  *Reporters Comm. for Freedom of Press*, 489 U.S. at 773; *see also United States v. HSBC,* 2016 WL 347670, at *5 (holding that a case concerning public access to a monitor's report "implicates matters of great public concern, and is 'therefore one which the public has an interest in overseeing.'").  Without a more detailed justification linking this access to specific harms, DOJ may not thwart that right.

## IV.   DOJ HAS NOT MET ITS BURDEN TO SEGREGATE RESPONSIVE, NON-EXEMPT INFORMATION

In its Opposition, DOJ asserts once again that its complete failure to segregate responsive, non-exempt information is defensible because, according to the agency, every word of the many documents that 100Reporters seeks is "so thoroughly integrated with the core deliberative materials withheld pursuant to Exemption 5 that its disclosure would inevitably reveal the agency's deliberation."  DOJ Opp. 32. DOJ's attempt at justification is not new, nor would be this Court's rejection of it as "unsophisticated parroting of FOIA's statutory language" that is "patently insufficient."  *Animal Legal Def. Fund, Inc. v. Dep't of Air Force*, 44 F. Supp. 2d 295, 301 (D.D.C. 1999) (addressing government claim that no document was "reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material.").

DOJ offers only a blanket declaration that the non-exempt information "is inextricably intertwined with Siemens' confidential commercial information or the core deliberative information" and so cannot be disclosed.  DOJ Opp. 33.  But this falls short of the obligation that "for *each* entry the defendant is required to specify in detail which parts of the document are disclosable."  *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004)(emphasis in original)(internal quotation marks omitted)  Accordingly, DOJ must better substantiate its claims of non-segregability or disclose the full records.  *Dorsett v. Dep't of Treasury*, 307 F. Supp. 2d 28, 40-41 (D.D.C. 2004).  *See also Morton-Norwich Prods., Inc. v. Mathews*, 415 F. Supp. 78, 82 (D.D.C. 1976); *Judicial Watch, Inc. v. USPS*, 297 F. Supp. 2d 252, 257 (D.D.C. 2004) (discussing document-by-document justification vis-à-vis segregability).  As the court in *Wilderness Society* explained, such a blanket statement is insufficient:  "the agency must evaluate each document to determine if the segregable material can be provided to the

requestor." *Wilderness Soc'y*, 344 F. Supp. 2d at18.   "As always," the court went on," it is incumbent on the *agency* to prove that no segregable information exists.  *Id.* at 19.  In *Smith v. Dep't of Labor*, for instance, the court found that the agency properly segregated the material where it redacted only 77 lines of text from a 234-page document and indicated under which FOIA exemption each of those 77 lines were based.  *Smith v. Dep't of Labor,* 798 F. Supp. 2d at 281; *see also Krikorian v. Dep't of State,* 984 F.2d 461, 467 (D.C. Cir. 1993) (remanding for segregability determination for "each of the withheld documents").  DOJ has not come close to exerting that amount of effort here to specify which portions of each document are exempt and under which exemption.

No matter how much DOJ protests that there is no true "freestanding" factual information contained in the withheld documents, the bottom line is that without providing some kind of detailed description of the redacted materials, the agency cannot meet its burden to justify non-disclosure.  DOJ Opp. 33.  For this reason, the Court must find that 100Reporters is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons and for those stated in support of its motion initially, Plaintiff 100Reporters respectfully requests that the Court grant Plaintiff summary judgment on its Complaint in this matter to the extent indicated herein.

24

Dated this 22nd day of September, 2016.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

/s/ Adam Shoemaker
Ronald G. London – Bar No. 456284
Adam Shoemaker – Bar No. 998763
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C. 20006

*Attorneys for Plaintiff*